[Civ. No. 2598.    Second Appellate District, Division One.—December 4, 1918.]

## R. C. FILDEW, Respondent, v. SHATTUCK AND NIMMO WAREHOUSE COMPANY (a Corporation), Appellant.

NEGLIGENCE—NONSUIT—EVIDENCE.—In an action for damages for personal injuries sustained as a result of defendant's negligence, proof of plaintiff's negligence is not alone sufficient to warrant the granting of a nonsuit, however clear that proof may be, but in addition thereto, it must further appear that plaintiff's negligence contributed proximately to his injuries.

ID.—INJURY TO ELEVATOR INSPECTOR — CONTRIBUTORY NEGLIGENCE—NONSUIT PROPERLY DENIED.—In this action for damages for personal injuries sustained by an inspector of elevators under contract with defendants to inspect, oil, and grease the same, it is held that the motion for nonsuit based on the ground that plaintiff was guilty of contributory negligence, as a matter of law, was properly denied.

ID.—TAKING HOLD OF GUARD-RAIL—REASONABLE STRAIN—INSTRUCTION. An instruction given at the request of the plaintiff to the effect that while he may have been employed to inspect the elevator, yet, if the jury believed that it was not his duty to inspect the guard-rails and the shaft of the elevator, he had a right to assume that the guard-rail, at the time of his injury, was in a reasonably safe condition, "and that the same would stand such a reasonable strain upon the same, such as the taking hold of the same with his hands for the purpose of enabling him to step from the top of the cage to the second floor of the building," provided the taking hold of and use of the same was with the exercise of ordinary care and caution on his part, is not subject to the objection that the quoted portion amounts to an instruction on a question of fact.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Paul J. McCormick, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. Karl Lobdell and Douglas L. Edmonds for Appellant.

R. T. Lightfoot for Respondent.

MYERS, J., *pro tem.*—The defendant appeals from a judgment against it and from an order denying its motion for a new trial, after verdict in favor of plaintiff in an action to recover damages for personal injuries alleged to have been sustained by plaintiff as a result of defendant's negligence.

Defendant was the owner of a warehouse, three stories in height, in Los Angeles, California, in the central portion of which was constructed a freight elevator consisting of an open platform about fourteen feet square, attached by uprights at either end to a cross-head, consisting of a twelve by twelve beam, fourteen feet in length, each end of which fitted into guides which extended vertically up and down the sides of the elevator shaft, the guides being fastened to vertical beams known as guide-posts. The cross-head was about ten feet above the platform of the elevator, which had no other covering or inclosure. The elevator shaft was not inclosed, except that there were at each floor sliding-gates opposite the north and south sides of the opening, and two railings on each of the east and west sides. The railings were respectively one and one-half and three feet above the floor and consisted of pieces of two by four scantling, one end of which was nailed to an upright support at the corner of the elevator shaft and the other end to the inside of the guide-post or upright beam upon which the guides for the elevator were fastened.

Plaintiff was an inspector of elevators in the employ of the Otis Elevator Company, which was under contract with the defendants to inspect, oil, and grease these elevators, and it was while so engaged that he was injured. He had just completed greasing the guides on one side of the elevator shaft, to do which it was necessary to stand upon the end of the cross-head. The elevator had been stopped, with its platform about three feet above the level of the first floor, for the purpose of

unloading some freight upon a truck standing there. This left the top of the cross-head about twenty inches below the second floor. In attempting to step from the cross-head to the second floor plaintiff took hold of the top guard-rail and, placing all his weight thereon, attempted to lift himself up to the second floor. The nails which held the guard-rail in place gave way and plaintiff was precipitated to the platform of the elevator, sustaining the injuries for which he sued.

Appellant's first contention is that the trial court erred in overruling defendant's motion for nonsuit for the reason, it contends, that it appears from the evidence that plaintiff was guilty of contributory negligence as a matter of law. This is predicated on plaintiff's own testimony, portions of which are as follows: "When we finished greasing then I attempted to get off, on the second floor, and in so doing I had to step up on the floor, and take hold of the rail. I put one foot up to take hold of the rail; had to take the other foot off of the cross-head and put it on the floor, and when I did that the rail gave way and let me drop down head first on to the floor of the elevator. . . . As I was standing on the cross-beam and before I stepped over on to the second floor, I was in such a position that I could see that top railing. I could see how it was fastened to the beam. I did not look at it to see how it was fastened. I took it for granted that it was fastened right. . . . At the time I put my right hand up to take hold of the rail I did not test it at all to see if it was secure. I then followed it with my right foot without testing it to see whether it was securely fastened or not. I took it for granted the rail was securely fastened without even looking or testing it." It further appeared that plaintiff was an experienced elevator inspector and had been engaged in regularly inspecting this elevator for several months prior to the accident; that he had never before gotten off this elevator at the second floor; that on previous occasions he had alighted from it in the same manner at the top floor; that this was the most practicable method of getting off from the cross-head; that the guard-rails at the top floor were apparently of the same construction as those at the second floor.

Appellant very earnestly contends that it clearly appears from this testimony, not only that plaintiff was not exercising reasonable care, but that he was not exercising any care at all; that a rational mind could not well draw any other conclusion

therefrom, and that, therefore, he was guilty of contributory negligence as a matter of law and the nonsuit should have been granted. But proof of plaintiff's negligence is not alone sufficient to warrant the granting of a nonsuit, however clear that proof may be. In addition thereto, it must further appear that plaintiff's negligence contributed proximately to his injuries. Conceding that plaintiff's negligence is here clearly established, we must then consider the further question whether it appeared with similar certainty that if he had looked he would have discovered the defect which caused the accident. Unless the evidence establishes this second element also to such a degree of certainty that but one conclusion can be rationally drawn therefrom, this court cannot, and the trial court could, not say that plaintiff was guilty of contributory negligence as a matter of law.

As to the manner in which the guard-rail was fastened, the evidence is conflicting. A witness for the plaintiff testified that it was fastened with four eight-penny nails driven through the two-inch thickness of the rail and thence into the upright, from which it follows that they projected into the upright only about one-half inch. Witnesses for the defendant testified that it was fastened with thirty-penny spikes. This latter testimony, of course, must be disregarded in considering the motion for nonsuit. Plaintiff's witness testified on this subject: "After the accident I examined that one end (of the guard-rail) and only found four eight-penny nails in it. I found this end that pulled away with Mr. Fildew had been hammered; that the nails were sunk in, also split the wood. It was a crack. I don't know how old it was; it looked to me from all appearances that it was an old crack." From this somewhat meager description we cannot say that it clearly appears as a matter of law that if the plaintiff had examined the guard-rail, even with great care, before trusting his weight to it, he would have discovered that it was insecurely fastened. We conclude, therefore, that the motion for nonsuit was properly denied. In each of the cases cited by appellant in support of its contention it appears either that the plaintiff had actual knowledge of the defect which caused his injury, or that the nature of it was such that it would have been obvious to him upon even a casual inspection. This circumstance sufficiently distinguishes those cases from the case at bar.

Appellant contends that the trial court erred in sustaining plaintiff's objection to the following question put by defendant to the witness W. J. Nimmo: "Q. I will ask you for what purpose the guard-rails around this elevator shaft were originally put there?" Appellant points out that the question of the purpose of the original construction of the guard-rails was put in issue by allegations of the complaint which were denied by the answer. Conceding, therefore, that the question was relevant, the objection was, nevertheless, properly sustained for the reason that no foundation was laid by showing that the witness had any knowledge respecting the purpose of the original construction of the guard-rails, except as he may have gathered such knowledge from conversations with people who installed the elevator, which, of course, would be hearsay. This witness was permitted, as were other witnesses for defendant, to testify that during the ten years or more during which the guard-rail in question had been in place it had always been used for the purpose of preventing any person from falling into the elevator shaft, and for no other purpose, to their knowledge; and plaintiff himself testified that such was the purpose for which such railings were usually installed. It nowhere appears that if the witness had been permitted to answer this particular question, he would have disclosed any other or different purpose.

Complaint is made of the giving by the court of the following instruction at the request of plaintiff: "While the plaintiff may have been employed to inspect the elevator of the defendant, yet, if you shall believe, from the evidence, that it was not the duty of the plaintiff to inspect the guard-rails and the shaft of the said elevator, he had a right to assume that the guard-rail in question, at the time of his injury, was in a reasonably safe condition, *and that the same would stand such a reasonable strain upon the same, such as the taking hold of the same with his hands for the purpose of enabling him to step from the top of the cage to the second floor of the building,* provided the taking hold of and use of the same was with the exercise of ordinary care and caution on his part." It is urged that the portion italicized amounts to an instruction of the jury upon a question of fact, and is equivalent to telling the jury that if the plaintiff in the exercise of ordinary care took hold of the railing for the purpose of enabling him to step from the top of the cage to the second floor

of the building, such constituted a reasonable strain upon the railing. This instruction is somewhat involved and not well calculated to aid the jury by clarifying the issues submitted to it; but, as we construe it, it amounts to no more than saying that if the strain to which plaintiff subjected the railing was an exercise of reasonable care, then it could not be held by them to be an unreasonable strain. This does not appear to us to be an instruction as to a matter of fact upon which the jury was to find, except as the facts were hypothetically stated therein, and thereby submitted to the jury for its determination.

Defendant contends that the court erred in refusing to give instruction No. 23, requested by the defendant. This was substantially in the language of an instruction approved by the supreme court in *Baddeley* v. *Shea*, 114 Cal. 1, set forth at page 5 thereof, [55 Am. St. Rep. 56, 33 L. R. A. 745, 45 Pac. 990]. Conceding, as we must, the instruction to have been a proper one in that case, it does not necessarily follow that it should have been given here. In that case the negligence upon which the plaintiff relied did not consist at all in any claim of negligent construction, but rather in the failure to inspect for defects which might thereafter arise by reason of rot and decay. As the court said: "It is not pretended by respondent that there was any defect in the construction of the steps or platform, except that he contends there was not sufficient ventilation under them." Here the negligence claimed does not rest at all upon the failure to inspect, but upon a claim of improper and insufficient construction in the first instance, and to these issues the instruction in question was clearly inapplicable.

Appellant contends that the evidence is insufficient to justify the implied finding that defendant was guilty of negligence because, it urges, there is no evidence in the record to support the conclusion that the railing was insufficiently fastened for the purpose for which it was *ordinarily used,* or for which the defendant could reasonably anticipate it would be used. In other words, appellant contends that the guard-rail in question was used and was intended to be used only for the purpose of protecting persons from inadvertently walking or falling into the elevator shaft, and the fact that it gave way under the strain placed upon it by plaintiff does not even tend to prove its insufficiency for the purpose stated. We

think, however, that the jury was warranted in concluding that a railing of such an apparently substantial character was designed and intended to serve some purpose beyond that of a mere warning sign, and that if the jurors believed, as they had a right to, the testimony of plaintiff's witness as to the manner in which it was fastened, they might conclude therefrom that it was inadequately constructed for any purpose to which it might reasonably be put. Each of the cases cited by appellant in support of this contention is distinguishable from the case at bar. Here the court properly instructed the jury that even though the railing was defective in construction, yet if they found that the plaintiff applied it to a purpose requiring greater strength than that which was intended, and that his fall was in consequence of such application and in using the railing, as plaintiff did use it, he was not exercising ordinary care, no negligence or breach of duty can be imputed to defendant on account of such defect in the construction thereof. We cannot say that the implied finding of the jury in response to that instruction is without any support in the evidence.

The judgment and order appealed from are affirmed.

Conrey, P. J., and James, J., concurred.