[Civ. No. 15912.   First Dist., Div. One.   Aug. 23, 1954.]

MURDIS WARREN, Appellant, v. ALFRED ROOS,
Respondent.

Arthur C. Zief, Rinaldo A. Carmazzi and Barbagelata, Zief & Carmazzi for Appellant.

Lamb, Hoge & Killion for Respondent.

PETERS, P. J.—Plaintiff, Murdis Warren, fractured a bone in his foot.  He consulted the defendant, Dr. Alfred Roos, a chiropodist.  Dr. Roos placed a flexible cast on the foot.  The fractured bone did not heal, the broken parts

slipped, and surgery, by a different doctor, was required to rectify the condition. This action for malpractice was brought on the theory that the treatment prescribed by Dr. Roos was improper, not in accord with proper standards, and that such negligence caused the condition necessitating surgery. From a judgment of nonsuit entered at the close of plaintiff's case plaintiff appeals.

Pursuant to the usual rule on such an appeal all conflicts in the evidence must be resolved in favor of the appellant.

The accident in which appellant's foot was injured occurred on Saturday, March 8, 1952. Appellant was then 46 years of age. At that time he held down three jobs. During the daytime he worked in a cafeteria. Each week-day night he worked five hours for a building maintenance concern. On Saturdays and Sundays he worked for a construction company. All three jobs required him to be on his feet constantly, and the construction job required him to do heavy lifting. It was while working for the construction company that he dropped a heavy timber on his foot. At the suggestion of his employer he went home and soaked his foot in hot salt water. The next Monday he continued in his two regular week-day occupations. His foot continued to pain him, and on Thursday, March 13, 1952, he went to the emergency hospital but was refused treatment. He was sent to a medical doctor who referred him to Dr. Roos, a chiropodist. Dr. Roos found the foot swollen, lacerated, bruised and painful. X-rays were taken. Dr. Roos' report to the compensation insurance carrier of the employer describing the conditions he then found states that there was "Profuse edema right forefoot, widespread ecchymosis, moderate laceration. X rays revealed complete irregular transverse fracture of first metatarsal shaft, mid-shaft right foot. Patient unable to bear weight on foot." The X-rays disclosed that the ends of the fractured bone were then in perfect alignment. Upon discovering these conditions, Dr. Roos gave the injured foot hydrotherapy and diathermy treatments, and then encased the foot in splints and adhesive tape in what is referred to in the record as a "flexible cast." Such a cast does not immobilize the foot as would a plaster of Paris cast. Dr. Roos testified that he told appellant to relax, to stay off the injured foot, and to use a cane or crutches. This testimony was directly denied by appellant who testified that he told Dr. Roos about his various jobs; that Dr. Roos knew that

he continued to work after March 13th; that Dr. Roos did not tell him to remain home and to keep off the injured foot; that the doctor did not tell him to use a cane or crutches; that he did not use a cane or crutches at any time while being treated by Dr. Roos, and that the doctor knew of this because on several occasions he came to the doctor's office for treatment and never used a cane. This conflict, on this appeal, must be resolved in favor of appellant.

After March 13, 1952, although his foot still pained him, appellant continued to work at the cafeteria and as a janitor, and occasionally visited Dr. Roos for treatments. On April 4, 1952, he told Dr. Roos about the increasing pain, which was then acute. A second set of X-rays were taken on that day in Dr. Roos' office but were not developed until Monday, April 7th. They disclosed that the fractured bone had not healed, and that the metatarsal shaft had pitched downward so that the broken bone now had a plantar angulation fracture. When he discovered this condition Dr. Roos testified that he had his secretary telephone to appellant but that no one answered the phone. Appellant testified that someone was at his home at all times who would have answered the telephone had such a call been made.

Appellant returned to respondent's office on April 9, 1952, and was informed of the then condition of the foot. Dr. Roos arranged for him to see an orthopedist, who recommended immediate surgery. Appellant was sent to the hospital and an operation performed on his foot by the orthopedist. Appellant remained in the hospital 11 days and when released was required to use crutches for some time. The operation realigned the fractured bone and a good recovery has resulted. By the fall of 1952 appellant was able to return to his cafeteria and janitorial jobs, but was not able then, and will continue to be unable, to do any job requiring heavy lifting.

In addition to the above testimony given by appellant or by respondent under section 2055 of the Code of Civil Procedure a Dr. Jensen, a medical doctor and orthopedic specialist was produced by appellant. He had examined appellant shortly before the trial. When shown the X-rays taken on March 13, 1952, he was asked what was the "proper procedure to treat a fracture of that kind?" He responded: "The usual accepted method is immobilization in a plaster of Paris cast" in order to "prevent motion as much as possible." He also testified that, had such a cast been applied,

he would have expected complete healing of the fractured bone within six weeks; that the usual accepted standard of medical men and orthopedic specialists was to immobilize the foot with a plaster cast "regardless of what type of medicine they practice"; that had the foot been immobilized the subsequent operation would not have been required. On cross-examination he conceded that some doctors might use a method of treatment different from the one described, and that he was not completely familiar with the standards, length or type of study of chiropodists but knew them to a certain extent. When ask if he considered the treatment given by Dr. Roos a "good treatment," he replied: "I think it should be immobilized in a plaster cast," and that the commonly accepted standard of general practitioners and orthopedists was to use a plaster cast.

After a motion for a nonsuit had been made and the trial court had indicated that appellant had failed to prove that respondent had not complied with the standard of care of chiropodists in this community, the court permitted appellant to produce further testimony. Appellant then produced Dr. Zabel, a chiropodist. He was asked if the "standard of treating the foot and care" of a chiropodist was "the same as a general medical doctor." He replied that it was. On cross-examination he was not asked any questions about his testimony on direct, but, after some argument, was made a witness for respondent. He then testified that in treating a fracture as disclosed by the X-rays of March 13, 1952, a chiropodist would use either a flexible or plaster cast dependent upon the amount of trauma or tissue damage, that it was up to the judgment of the individual practitioner, and that he had used a flexible cast to treat fractures of the type here involved. He also stated that from the X-rays alone he could not tell how much tissue damage was involved in the injury, that if there was extensive tissue damage a plaster cast was called for, but if not, a flexible cast was permissible, but that if a flexible cast were applied it "should be followed by a period of non-weight-bearing on the part," and the patient should be put on crutches, to assure that no pressure would be put on the metatarsal shaft, and be kept off his feet as much as possible.

Dr. Jensen was then recalled and testified that the history and condition of the injury as reported by Dr. Roos, and quoted earlier in this opinion, definitely indicated soft tissue damage, and that was so whether the person examining the

injury was a "chiropodist, horse doctor, liquor salesman or whatnot." Dr. Jensen conceded that he was not qualified to answer questions as a chiropodist, but that he agreed with Dr. Zabel that with soft tissue damage a plaster of Paris cast was called for, and that the standard of care for physicians and chiropodists was the same in this respect.

The nonsuit was granted on the theory that appellant had failed to establish, by proper evidence, that respondent had failed to comply with the standard of care of chiropodists, and so had failed to establish a prima facie case. ▮ It is, of course, the law that in malpractice cases the plaintiff, in the absence of a res ipsa loquitur situation, must offer proof that the defendant doctor in his treatment failed to use that degree of care ordinarily exercised by other doctors under similar circumstances (*Howe* v. *McCoy*, 113 Cal.App. 468 [298 P. 530]), and such testimony must be produced from an expert qualified to testify as to such standards. (*Sinz* v. *Owens*, 33 Cal.2d 749 [205 P.2d 3, 8 A.L.R.2d 757]; *Huffman* v. *Lindquist*, 37 Cal.2d 465 [234 P.2d 34, 29 A.L.R.2d 485]; *Pearce* v. *Linde*, 113 Cal.App.2d 627 [248 P.2d 506].)

▮ Tested by the rules applicable to appeals from a judgment of nonsuit it is apparent that appellant adequately established a prima facie case that should have been submitted to the jury.

It was definitely established by the evidence that, had an inflexible cast been used, surgery would not have been required. Thus proximate cause was established. This is not seriously questioned. The question is, did appellant establish that the treatment given that resulted in the injury was not in accord with the generally accepted standards used by chiropodists in this community in treating such an injury? The evidence shows that appellant established a prima facie case of negligence in three different respects:

1. Dr. Jensen qualified as a general practitioner and orthopedic specialist. He testified that general practitioners, as well as specialists, in this community in treating a fracture of the foot of the type here involved customarily immobilized the foot in a plaster of Paris cast, and that a flexible cast should not be used. Dr. Zabel, a chiropodist, then testified that the standard of care of chiropodists and of general practitioners in treating such an injury was the same. Thus, when the testimony of these two doctors is read together it establishes that Dr. Roos did not use the accepted method

of treatment customarily used by chiropodists in this community.

It is true that Dr. Zabel also testified as a witness for respondent that among chiropodists it rested in the discretion of the doctor as to whether a flexible or inflexible cast should be used. But that did no more than create a conflict with the testimony of Dr. Jensen. That conflict, on this appeal, must be resolved in favor of appellant.

2. Even if Dr. Zabel's testimony were uncontradicted that chiropodists have a choice of remedies, and that a flexible cast is one method of treatment customarily used by chiropodists, nevertheless there was adequate evidence to show negligence on the part of Dr. Roos. Dr. Zabel testified that if a flexible cast were used, the patient should be advised to use crutches and to keep off his feet. There is ample evidence that placing weight on a fractured bone would tend to make the bone slip. Appellant testified that Dr. Roos knew that he was working at jobs that kept him on his feet, that Dr. Roos never advised him to keep off his feet, and never told him to use crutches or a cane. Dr. Roos' testimony to the contrary merely created a conflict. According to the uncontradicted medical evidence permitting a patient with a flexible cast to walk without crutches would be contrary to the standard adopted by chiropodists in this community.

3. Dr. Zabel also testified that if there was substantial tissue damage near the fractured bone the practice among chiropodists was to use a plaster cast. While he had no knowledge of the extent of such tissue damage here involved, Dr. Jensen testified that, from the history of the case and the conditions as disclosed by the report prepared by Dr. Roos, it was apparent that there was tissue damage. It was for the jury to say whether such tissue damage was so extensive as to require an inflexible cast. If the jury had so found, it could then find, based on the above evidence, that failure to use an inflexible cast was contrary to the accepted method of treating such an injury employed by chiropodists in this community.

The evidence need not be further discussed. It is obvious that there was ample and substantial evidence to establish a prima facie case of negligence, and that the motion for a nonsuit should not have been granted.

The judgment appealed from is reversed.

Bray, J., and Wood (Fred B.), J., concurred.