[Civ. No. 7994. Third Dist. Apr. 29, 1952.]

ESTHER COPELAND, Appellant, v. C. H. RABING et al., Respondents.

R. H. Schwab and Carl Kuchman for Appellant.

Jacka & Frasse for Respondents.

VAN DYKE, J.—Under date of April 1, 1946, there was conveyed to C. H. Rabing, Ella M. Rabing, his wife, Charles Alexander Rabing, a son of the first two named, and Esther Rabing, the son's wife, in joint tenancy, certain real property in Sutter County. At the same time the grantees executed to their common grantor a promissory note for $51,000, being the balance of the purchase money for the land after the payment to the grantor of $9,000. This note bound the makers to pay the principal sum in installments consisting of one-third of the gross returns of sale of all crops produced upon the property, with a provision that the minimum annual payment be not less than $5,000 plus interest on the unpaid balance. The performance of these obligations was secured by a crop mortgage upon all the crops to be grown during the existence of the indebtedness, and by a deed of trust upon the real property. The son, Charles Alexander Rabing, and his wife, plaintiff herein, moved upon the property and the joint owners began the operation of the ranch. On May 26th following Charles Alexander Rabing died and the record title by operation of law vested in his surviving joint tenants. On October 30, 1947, plaintiff herein, who in the meantime had married one Copeland, for a consideration of $1,000 conveyed her interest in the property to her cotenants, C. H. Rabing and Ella M. Rabing. More than two years thereafter and on December 23, 1949, she brought this action against her grantees, seeking, first, to have it decreed that by the deed of April 1, 1946, conveying the property to the four

joint tenants, the defendants C. H. and Ella M. Rabing, took only a security interest for money advanced and obligations undertaken in the purchase of the property; second, that it be further decreed that her deed of October 30, 1947, purporting to convey her interest in the property to the defendants was null and void and that the same be canceled and set aside as having been obtained by fraud; third, that she, plaintiff, be decreed to be the owner of the property free of any claim of the defendants excepting the mortgagee's interest for any funds advanced in the purchase of the property and unrepaid, or any payments advanced in the matter of the note installments and unrepaid; and, finally, that C. H. Rabing be required to account to plaintiff for all farming operations during the period between the taking of the first deed and the beginning of the action herein. The complaint contained three counts, the third being the action for accounting. By the first count plaintiff alleged that when the property was purchased, her then husband and she paid down the sum of $9,000 and executed the note and security instruments for the balance of the $60,000 purchase price; that the defendants had advanced to her and her husband $8,250 of the down payment and had executed the note and the security instruments as coobligors with an accompanying oral agreement that, to secure repayment to the defendants for the advance and for any payments which they might thereafter have to make, the property should be conveyed to the four in joint tenancy; that the deed was taken and the accompanying note and security instruments were executed in accordance with that understanding; that on October 30, 1947, after the death of the son, the defendants repudiated the plaintiff's claim as owner and their status as mortgagees; that since July 15, 1947, defendants had occupied the property, asserting complete title thereto; that the first advance of $8,250 made by the defendants had been repaid by October 1, 1946, and that the accruing installments of principal and the accruing interest upon the promissory note had been discharged from moneys received through farming the property without any further contributions made or required of defendants, and that defendants had no interest other than that of their original status of security holders. By the second count it was additionally alleged that, after the death of his son, defendant C. H. Rabing entered into an oral agreement of trust with plaintiff whereby he agreed to serve her as trustee in

the farming of the land and the application of the gross returns in the discharge of advances, plaintiff to receive the net proceeds thereafter; that he entered upon his duties as such trustee and farmed the property for plaintiff; that he was a man of wide and varied business experience possessing knowledge and expert skill with relation to the value of real property, including that involved in the action; that plaintiff was without experience in such matters and ignorant of the worth of the property and placed great trust and confidence in Rabing, looking exclusively to him for advice and guidance; that on October 30, 1947, at the time she conveyed the property to the Rabings, he had represented to her that the property was greatly depreciated in value; that her ownership was valueless; that there were no moneys payable to her out of receipts from the property, but that on the contrary she was indebted to him because of advances he had had to make in excess of farming proceeds; that she was in debt for taxes upon the property and upon the proceeds therefrom; that he thereupon offered to give her $1,000 if she would deed her interest over to him and his wife and that, relying upon these representations and because of her trust and confidence in him and her ignorance of values and of the situation, she executed the deed conveying the property to Rabing and wife as joint tenants. She alleged these representations to have been false and knowingly made for the purpose of obtaining her property interests; that the property, instead of being depreciated, was worth $60,000; that the $8,250 advance had been repaid from farm income; that the principal obligation on the note had been reduced by $25,000 and that by November 30, 1947, Rabing had in his hands as her trustee additional sums approximating $30,000.

The cause was tried and as to the first two counts, those involving title to the property, plaintiff was nonsuited on motion of defendants at the close of her evidence in support of the allegations of those two counts. As to the third count, however, the court found that after the death of the son on May 26, 1946, the defendant C. H. Rabing received sums of money as profits from the sale of produce grown upon the property; that by the time the challenged deed passed between plaintiff and defendants, and treating plaintiff as one-third owner in joint tenancy of the property, defendant C. H. Rabing had received from the farming operations net profits in such sum that there was owing from him to plaintiff the sum of $2,939.52. Treating her conveyance as valid, the court

decreed that she recover said sum from defendants. As to this third cause of action, an accounting was taken with the result above stated, and it appeared therefrom that during the period between the death of the son and the date of plaintiff's deed to defendants the Rabings had been repaid the original advance of $8,250 and there had been paid upon the balance of the purchase price, evidenced by the promissory note, about $19,000. Plaintiff has not appealed from the judgment in the accounting action nor from that part of the judgment based on the order nonsuiting her as to the first count wherein she sought a decree that defendants had originally only a security interest. She has appealed from that part of the judgment based on the order nonsuiting her as to the second count.

A nonsuit may not be granted if, disregarding all unfavorable evidence and inferences, and viewing the evidence most favorably to the plaintiff, there is any substantial evidence, including inferences from evidence, which would support a finding for plaintiff. (*Seckel* v. *Allen*, 67 Cal.App. 2d 146, 150 [153 P.2d 394].) If the evidence is fairly susceptible of two constructions or if one of several inferences may reasonably be made the reviewing court must take the view most favorable to the plaintiff, and contradictory evidence, if given, must be disregarded. The plaintiff is entitled to the benefit of every piece of evidence which tends to sustain her averments and such evidence must be weighed in the light most favorable to plaintiff's claim. (*Seckel* v. *Allen*, *supra*, and cases cited.) We find respondents in their brief urging the following: That there is a presumption that one is innocent of fraud which approximates in strength the presumption of innocence of crime; that it is the duty of the court or jury to draw from proved facts the inference favorable to fair dealing rather than the inference of corrupt practice; that it was incumbent on plaintiff to produce competent evidence to the court at the time of trial sufficient to overcome the presumption of innocence; that if evidence introduced could be interpreted in one of two ways, either innocently or as indicating fraud, it was the trial court's duty to find in favor of fair dealing and innocent conduct; that the plaintiff had not met this burden of proof. These rules of law find their application in the trial court when a decision is made on the merits. They have no application to a motion for nonsuit and they have no application here. "[T]hat fraud is never pre-

sumed . . ., of course, is the law. However, the rule has no pertinency when a motion for a nonsuit in an action based on a claim of fraud is the question involved. If defendants would make use of the rule they should have waited until the cause was submitted to the jury and then have argued for and against presumptions." (*Seckel* v. *Allen, supra,* pp. 149, 150.) Applying the appropriate rules, we find the record contains the following evidence: With respect to the second count of the complaint which alleges fraud in the procuring of the deed from plaintiff to the defendants in October of 1947, it was testified that, after the death of his son, defendant C. H. Rabing told plaintiff that he felt the son would have liked to have the ranch run just as it had been while he lived; that defendants and plaintiff would go ahead as the son had been doing; that plaintiff would stay on the property and do the book work; that thereafter she stayed on the ranch and worked until she left to remarry; that her second marriage was not successful and that Rabing offered to buy her out; that after some preliminary negotiations plaintiff and Rabing met in a hotel in Marysville, where he told her that he wanted a lot of money to cover income taxes and moneys that were due, which she was unable to supply; that the ranch was losing money and that it took everything he could make and find to run the place; that he wasn't getting his money out and he wanted to sell the place in order to do that because it was taking everything he could borrow to run it; that she believed him, but had refused the first offer of $500 because she thought the ranch was certainly worth more than that; that he then said that he wasn't making any money, he was still trying to get his money out of it and every year had been putting more and more into it so he wanted to sell and get out from under; that he would give her $1,000 for her interest; that she figured he had to get his money out somehow and that whatever he sold the ranch for would probably only be what he had put into it; that the ranch was still worth $60,000; that while preliminary negotiations had been had between attorneys representing each side, yet at the hotel in Marysville Rabing told plaintiff they didn't need to have any attorneys because he knew what he was doing, that attorneys were too high and were not needed, that he would meet her the next morning at the title company and in the meantime he would try and borrow $1,000 somewhere. The next morning Rabing took her over to the title company in Yuba City where she signed the challenged deed.

■ There is much more if the rule of favorable consideration above stated is applied to all of the testimony, but what we have stated is amply sufficient to necessitate the reversal of the judgment of nonsuit appealed from as to the second cause of action based on fraud. This of course is not to say that Rabing was guilty of any fraud. It is simply to say that whether or not he was, had, under the circumstances, to be determined by a decision upon the merits, and that is all that is involved in this appeal. For though the judgment on the accounting suit disclosed that the ranch operations had been profitable, that Rabing had been repaid his initial advance, and that the mortgage had been materially reduced, yet, according to the testimony of plaintiff, which must here be taken as true, he made representations, the materiality of which could not be questioned, contrary to the facts, as a result of which for $1,000 he obtained her interest in the property, having at that time either in his possession, or due from crops then sold, funds aggregating approximately three times that much, which belonged to her.

■ We have said nothing concerning the presumption of fraud which would arise immediately if it were shown by the evidence that when plaintiff deeded her interest to the defendants she stood in confidential relations with Rabing. "All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence." (Civ. Code, § 2235.) The evidence we have recited concernng the relationships between the plaintiff and the defendant C. H. Rabing, if it does not necessitate, certainly affords ample support for an inference that confidential relationships did obtain between the two, and the existence of such a relationship alone was enough to necessitate trial on the merits on the question of fraud. (*Estate of Kromrey*, 98 Cal.App.2d 639, 646 [220 P.2d 805].)

That part of the judgment appealed from is reversed.

Peek, J., and Schottky, J. pro tem., concurred.

The opinion and judgment were modified to read as above printed on May 6, 1952.