[Civ. No. 20657. Second Dist., Div. Three. Aug. 25, 1955.]

LEONARD A. ENGELMAN, JR., et al., Appellants, v. CONSOLIDATED HOUSE MOVERS, INC. (a Corporation) et al., Respondents.

[Civ. No. 20658. Second Dist., Div. Three. Aug. 25, 1955.]

VINA ENGELMAN, as Administratrix, etc., Appellant, v. CONSOLIDATED HOUSE MOVERS, INC. (a Corporation) et al., Respondents.

Vaughan, Brandlin & Wehrle and Warren J. Lane for Appellants.

Kenneth J. Murphy and Henry E. Kappler for Respondents.

WOOD (Parker), Acting P. J.—These two actions were consolidated for trial. One action is for damages for wrongful death. The other action is for medical expenses, loss of wages of decedent, and damage to his automobile. Orders of nonsuit were made, based upon the opening statement of counsel for plaintiffs. Plaintiffs appeal from the orders.

The allegations of the complaints in the two actions were substantially the same, except as to damages. Those allegations (except as to damages) were, in part: Sunset Boulevard was a public street in the city of Los Angeles. On August 6, 1952, about 2:15 a. m., deceased Leonard A. Engelman was operating a Hillman-Minx "sedan" in a westerly direction on Sunset Boulevard. At said time defendants so negligently

and unlawfully operated a truck "together with the frame house being towed by said truck" in an easterly direction on Sunset Boulevard, and they so negligently and unlawfully placed the house upon said boulevard, that "the same" collided with the sedan being operated by deceased. As a proximate result of defendants' negligence as aforesaid, and by reason of the collision, deceased was injured, and he died on November 6, 1952.

The actions, at plaintiffs' request, were set for a trial by jury. When the case was called for trial, the attorneys for the parties and the judge had a discussion regarding the issues, the evidence, and questions on voir dire examination of jurors. Then the attorney for plaintiffs said that he had no witnesses except as to the position of the house and that it was moved east along the middle of the street and occupied the lane which, under section 525* of the Vehicle Code, was reserved for westbound traffic. Then after some discussion as to whether that section 525 was applicable herein, the judge said: "If you do not have any evidence I am willing to assist you in conserving your clients' money by allowing you to make an opening statement embracing everything that you could prove and rule upon a motion for a nonsuit, if you would want to stipulate that that could be done before the jury is empaneled, with the same force and effect as though the jury had been empaneled." Thereupon the parties so stipulated.

The opening statement was as follows:

"Plaintiff Vina Engelman is the surviving widow, and plaintiff Leonard A. Engelman, Jr. is the surviving minor child of Leonard A. Engelman, Deceased.

"On August 6, 1952, at or about 2:15 A. M., the defendants Consolidated House Movers, Inc. and its employees Harvey B. Forsyth and Phillip Tourigney were moving a house along and upon Sunset Boulevard in an easterly direction near the

---

*Section 525 of the Vehicle Code provides, in part, that "(a) Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows: (1) When overtaking and passing another vehicle proceeding in the same direction. . . . (2) When placing a vehicle in a lawful position for, and when such vehicle is lawfully making a left turn. (3) When the right half of a roadway is closed to traffic while under construction or repair. (4) Upon a roadway designated and signposted for one-way traffic. (b) The State Department of Public Works shall by regulation determine a distinctive roadway marking which shall indicate no driving over such marking. . . . When such markings or signs . . . are in place, the driver of a vehicle shall not drive along the highway to the left thereof. . . ."

intersection of Sunset Boulevard and St. Andrews Place in the City of Los Angeles, County of Los Angeles, State of California. The house was being towed by a truck owned by the defendant Consolidated House Movers, Inc. and being driven by the defendant Harvey B. Forsyth.

"That at said time and place the deceased Leonard A. Engelman was driving a Hillman-Minx automobile in a westerly direction along and upon said Sunset Boulevard. At the point of the accident involved herein, Sunset Boulevard was 72 feet wide. The house being moved by the defendants was approximately 30 feet wide. The house being towed rested upon a device commonly known as dollies having wheels. Such dollies were a device for moving the house and extended approximately the width of the house. At the time and place of the accident the truck towing the house and the dollies was moving down the center of Sunset Boulevard and the house being towed extended across the center line to the north approximately the full width of the lane for westbound traffic nearest the center line. At the point of the accident Sunset Boulevard is divided down the center of the street by two white lines, conforming to the provisions of Section 1411 of Title 21 of the California Administrative Code, the same being the regulation promulgated by the State Department of Public Works in accordance with the provisions of Section 525, subdivision b, of the Vehicle Code of the State of California. At this point on either side of the double white line is a single white line dividing the westbound traffic into two lanes and likewise dividing eastbound traffic into two lanes. The house thus occupied the traffic lane on either side of the double white center line. The automobile being driven by the deceased, Leonard A. Engelman, was at the time of the accident and prior to the accident, wholly to his right of the double white center line and was in the traffic lane for westbound traffic nearest the double center line. The point of impact was approximately 19 feet west of the west curb line of St. Andrews Place, north portion, and 30 feet south of the north curb of Sunset Boulevard. The northeast portion of the house being towed by the defendants collided with the left front portion of the automobile being driven by the deceased.

"As a result of this collision the deceased sustained injuries which caused him to be confined to the Los Angeles General Hospital for three months. On November 6, 1952, the deceased, Leonard A. Engelman, died as a proximate result

of the injuries sustained in this accident. The medical and hospital expenses incurred for the treatment of the deceased from the time of the accident to the time of his death amounted to approximately $1,500. The automobile being driven by the deceased was totally demolished and its reasonable value is approximately $1,875.

"The deceased was 36 years of age at the time of his death and left surviving him as his only heirs the plaintiffs. The plaintiff Vina Engelman was approximately 38 years of age, and plaintiff Leonard A. Engelman, Jr. was approximately 12 years of age.

"Plaintiff and deceased were married in 1940 and had lived together continuously from the date of marriage and were living together at the time of the accident.

"At the time of his death and for several years prior thereof, the deceased was employed by Columbia Studios as a makeup artist and earned approximately $7,500 a year."

Defendants' motion for nonsuits was granted. The judge stated: "The opening statement does not disclose any facts which the plaintiffs would expect to prove that would constitute an act or omission on the part of the defendants upon which liability could be predicated. The motion for a nonsuit is granted, and this order granting the motion for a judgment of nonsuit is, pursuant to Section 581c, an adjudication upon the merits, and, under Section 581d, this order shall constitute the judgment." According to the opening statement Sunset Boulevard "is divided down the center" by two white lines; and the truck which was towing the 30-foot-wide house was moving easterly down the center of Sunset Boulevard and the house extended across the center line to the north (on the wrong side of the boulevard) approximately the width of the westbound traffic lane which was next to the center line. In other words, a part of the truck was on the wrong side of the boulevard, and a part of the house —covering approximately the westbound traffic lane next to the double line—was on the wrong side of the boulevard; and the northeast portion of the house collided with the left front portion of the automobile that was being driven by deceased (on the right side of the boulevard) in said westbound traffic lane. As above shown, section 525 of the Vehicle Code provides, in part, that a vehicle shall be driven upon the right half of the roadway, except under certain conditions (such as passing a vehicle going in same direction, turning left, right half under construction, one-way traffic) which have no

application here. The truck and house being upon the left or wrong side of the boulevard constituted a prima facie violation of said section. ▮ "Driving on the wrong side of the highway is prima facie evidence of negligence and calls for an explanation on the driver's part. . . ." (*Musgrove* v. *Zobrist*, 83 Cal.App.2d 101, 103 [187 P.2d 782].)

▮ Therefore, the opening statement disclosed facts that would constitute a prima facie showing of negligence on the part of defendants. The opening statement did not include a statement that defendants or any of them had a permit to move the house upon or along the left or wrong side of the boulevard or to move the house upon or along the boulevard at all; nor did it include a statement showing an exception under section 525 which would justify moving the truck and house upon the wrong side of the boulevard. Appellants' counsel, in his argument in the trial court, did not argue that defendants did not have a permit; nor does he argue on appeal that defendants did not have a permit. His argument at the trial and here is to the effect that the movement of vehicles across the double white line in the center of the boulevard is prohibited under said section 525 of the Vehicle Code and under the regulation of the State Department of Public Works (Cal. Admin. Code, tit. 21, § 1411) determining that double white lines are a distinctive roadway marking indicating there shall be no crossing over or driving to the left thereof. He also argues that the device used to transport the house (namely, the truck and dollies under the house) was a vehicle. Counsel for defendants argues that the housemoving equipment was not a vehicle; that even if it were such a vehicle, the Legislature intended that local authorities could make exceptions in certain cases to the general rules of conduct set forth in the Vehicle Code; that regulating the moving of buildings through streets is such an exception; and that said section 525 is not controlling because cities and counties have authority to use their streets in a manner other than is provided in the Vehicle Code. At the trial, during the discussions which preceded the making of the opening statement and during the argument of defendants' counsel in support of his motion for nonsuits, defendants' counsel said that defendants had a permit to move the house. Counsel for appellants did not say that defendants had a permit. Just preceding the oral decision of the judge, counsel for defendants said: "I don't believe the state occupies the entire field of the city streets, and I don't believe Section 525

prohibits a city or any municipality from making exceptions to the use of their streets, regardless of 525. *And the presumption is that the law has been obeyed.* I believe counsel will agree with me *we had a proper permit."* Counsel for appellants made no reply thereto. Then the trial judge said (preceding the part of his oral decision above quoted) : "As a part of the plaintiffs' case I would assume that any presumptions established by law would, of necessity, have to be included and considered by the court. Section 1963 sets out the disputable presumptions. Sub-section 33 is one presumption; 'That the law has been obeyed.' That presumption, therefore, would have to be considered by the court as having been included by reference in the plaintiffs' opening statement. Similarly, the presumption in 1963, subdivision 4, that a person takes ordinary care of his own concerns." It is to be noted that, just preceding the oral decision by the judge, counsel for defendants referred to the presumption that the law has been obeyed, and then said that he believed that counsel for appellants would agree that defendants had a permit. Immediately after such a reference the trial judge, in commencing his oral decision, referred to that presumption and said that it would have to be considered by the court as having been included in the opening statement. A question arises as to whether the trial judge meant that by reason of the presumption he would have to consider that defendants obeyed the law in the matter of obtaining a permit, and therefore that they had a permit. Since the judge's reference to the presumption followed immediately the reference of defendants' counsel to such presumption and to a permit, it would seem that the judge meant that by reason of such presumption he would consider that defendants had a permit. Unless such a presumption was a part of the opening statement, there was nothing in the opening statement indicating that defendants had a permit. ■ Such a presumption (that defendants obeyed the law and therefore had a permit) should not be considered as a part of the opening statement.

■ Upon a motion for a nonsuit, disputable presumptions in favor of a defendant are not to be considered. In *Copeland v. Rabing,* 110 Cal.App.2d 631 [243 P.2d 119], a motion for nonsuit was granted as to the second cause of action which was based upon fraud. It was said therein at page 635 : "We find respondents in their brief urging the following: That there is a presumption that one is innocent of fraud which approximates in strength the presumption of innocence of

crime; that it is the duty of the court or jury to draw from proved facts the inference favorable to fair dealing rather than the inference of corrupt practice; . . .." Immediately following said quotation it was also said therein: "These rules of law find their application in the trial court when a decision is made on the merits. *They have no application to a motion for nonsuit* and they have no application here. ' [T]hat fraud is never presumed . . ., of course, is the law. However, the rule has no pertinency when a motion for a nonsuit in an action based on a claim of fraud is the question involved. If defendants would make use of the rule they should have waited until the cause was submitted to the jury and then have argued for and against presumptions.' " (Italics added.) As above shown the truck and house were on the wrong side of the boulevard, and such position was prima facie evidence of negligence. ▉ If defendants had lawful excuse or justification for being in such position, the burden was upon them to prove such excuse or justification. (*Musgrove* v. *Zobrist, supra,* 83 Cal.App.2d 101, 104 [187 P.2d 782].)

There being no evidence herein that defendants had a permit to move the house along the wrong side of the boulevard, it is not necessary to decide whether the city or county would have authority to issue such a permit. The orders of nonsuit herein were based upon plaintiffs' opening statement, and the question before this court is whether the statement was legally sufficient.

The orders of nonsuit are reversed.

Vallée, J., and Ashburn, J. pro tem.,* concurred.

A petition for a rehearing was denied September 14, 1955, and respondents' petition for a hearing by the Supreme Court was denied October 19, 1955.

---

*Assigned by Chairman of Judicial Council.