[S. F. No. 19485.   In Bank.   Dec. 21, 1956.]

GRACE T. LEONARD, Appellant, v. WATSONVILLE
COMMUNITY HOSPITAL et al., Respondents.

Crist, Peters & Donegan and Elton F. Martin for Appellant.

Wyckoff, Parker, Boyle & Pope, McCarthy & Franich and Henry F. Brauer for Respondents.

GIBSON, C. J.—A scissors-shaped metal instrument about 6 inches long, called a Kelly clamp, was left in plaintiff's abdomen when an operation was performed on her at defendant hospital. The operation was commenced by Doctors Lacy and Slegal. Kay Pogatschnik, who was an employee of the hospital, acted as surgical nurse. Doctor Eiskamp assisted in a part of the operation at the request of Doctor Lacy. Plaintiff was unconscious during the entire operation, which lasted approximately five hours. She was in considerable pain during the 10 days she remained in the hospital following the operation, and the pain persisted for several months after she returned home. X-ray pictures taken about six months after the operation revealed a clamp lodged in the upper right quadrant of her abdomen. The clamp was removed, and plaintiff brought this action to recover damages from the hospital, the doctors and the surgical nurse. At the close of plaintiff's case motions for nonsuit were granted as to Eiskamp, Pogatschnik and the hospital, and plaintiff has appealed from the ensuing judgment.[1]

The questions presented are whether an inference of negligence was raised under the doctrine of res ipsa loquitur and whether, if such an inference arose, it was dispelled as a matter of law.

Evelyn Craig, who was superintendent of the hospital, and defendants Lacy, Slegal and Eiskamp were called by plaintiff to testify under section 2055 of the Code of Civil Procedure, which provides that in a civil action a party may call and examine an adverse party.

The testimony of Lacy, who was in charge of the operation, may be summarized as follows: He scheduled the operation after deciding that an exploratory examination of the upper right quadrant of plaintiff's abdomen should be made. The

---

[1]The case against Lacy and Slegal was settled after the nonsuits were granted as to the other defendants.

hospital assigned Pogatschnik to act as surgical nurse, furnished all equipment and instruments, and charged plaintiff for the use of the room and for the services of the nurse. The operation began with Lacy and Slegal making an incision from plaintiff's navel upwards, exposing her gall bladder, which was diseased.

About 40 minutes after the operation was begun, Lacy requested Eiskamp, who had been performing surgery in another part of the hospital, to look at plaintiff's gall bladder. Eiskamp made a visual inspection and recommended that the gall bladder be removed. After Eiskamp left the room, Lacy and Slegal discovered a ''mass'' in the sigmoid colon, which appeared to be cancerous. Lacy again consulted Eiskamp, who agreed that the mass should be removed and offered to help. The doctors decided not to operate on the gall bladder, and, while Lacy began to close the upper half of the incision, Eiskamp and Slegal prepared to remove the mass, which was in the lower left quadrant. None of Eiskamp's work was performed in the upper portion of plaintiff's abdomen, and he left the room before final closure of the incision. During the operation Lacy and Slegal used about 18 Kelly clamps which are uncurved scissors-shaped instruments. Eiskamp did not use anything but curved clamps. Lacy paid Slegal his fee but never received a bill from Eiskamp for his services.

Lacy further testified that the surgical nurse keeps a set of instruments on a tray very close to the surgical field and that one of her principal functions is to hand instruments to the doctor and take them back from him. No request for an instrument count was made by Lacy. The practice of hospitals generally is to maintain a sponge count before closure of an incision and to account for the needles used in suturing. This practice is followed by the nurses at defendant hospital.

Slegal's testimony substantially confirmed that of Lacy as to the sequence of events in the operating room. He said that Eiskamp did not take part in closing the upper portion of the incision and left before final closure of the abdomen.

Eiskamp testified that no Kelly clamps were used in his part of the operation, that he ''had nothing to do with the gall bladder'' and that in order to speed the operation he worked with Slegal on the tumor in the lower left quadrant of the abdomen.

Superintendent Craig testified that surgical instruments are furnished by the hospital, that they are placed in sterile packs containing a specified number and that she believed there are 18 Kelly clamps in a pack. After an operation all instruments are taken directly from the operating room, cleaned and reassembled into packages by a nurse or some other hospital employee. At the time of plaintiff's operation no one person was designated as being responsible for collecting and reassembling the instruments, and none of the hospital employees reported that any instrument was missing. Hospitals in the area "have no established practice of instrument counting either before or after surgery." Sponges and needles are usually counted, and an instrument count is made if requested by the surgeon.

When a foreign object is unintentionally left in a patient's abdomen it is ordinarily the result of the negligence of someone. (*Ales* v. *Ryan*, 8 Cal.2d 82 [64 P.2d 409].) And where a patient receives unusual injuries while unconscious, all of the persons who had any control over his body or the instrumentalities which might have caused the injuries may properly be called upon to meet the inference of negligence by giving an explanation of their conduct. (*Ybarra* v. *Spangard*, 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258].) The evidence is sufficient to raise an inference of negligence under the doctrine of res ipsa loquitur as to Eiskamp, Pogatschnik and the hospital. Eiskamp assisted in the operation; at one time or another during the operation the control of the instrument left in plaintiff's body was in the hands of the nurse; the hospital employed the nurse and furnished and reassembled the instruments. This places upon them the burden of initial explanation. (*Ybarra* v. *Spangard*, *supra.*)

Plaintiff contends that the inference of res ipsa loquitur was not dispelled as a matter of law and that therefore the court erred in granting the motion for a nonsuit. The same test is applicable in determining when the res ipsa loquitur inference is dispelled as a matter of law as in deciding when any other inference is conclusively rebutted. (See *Rose* v. *Melody Lane*, 39 Cal.2d 481, 487 [247 P.2d 335]; *Leet* v. *Union Pac. R. R. Co.*, 25 Cal.2d 605, 621-622 [155 P.2d 42, 158 A.L.R. 1008].) It has long been the rule in this state that a nonsuit may be granted only when, disregarding conflicting evidence, giving to the plaintiff's evidence all the value to which it is legally entitled, and indulging

in every legitimate inference which may be drawn from that evidence, the court properly determines that there is no substantial evidence to support a verdict in favor of the plaintiff. (*Seneris* v. *Haas,* 45 Cal.2d 811, 821 [291 P.2d 915]; *Estate of Caspar,* 172 Cal. 147, 150 [155 P. 631].) There is, however, a qualification on this broad general rule. ▮ It is settled that where the evidence raises an inference that a fact exists, and either party produces evidence of the nonexistence of the fact that is clear, positive, uncontradicted and of such a nature that it cannot rationally be disbelieved, the nonexistence of the fact is established as a matter of law. (See *Blank* v. *Coffin,* 20 Cal.2d 457, 461 [126 P.2d 868].) In these circumstances the inference is dispelled as a matter of law, and, if the fact inferred is necessary to establish an essential element of the plaintiff's case, a nonsuit or directed verdict is proper. (*Engstrom* v. *Auburn Auto. Sales Corp.,* 11 Cal.2d 64 [77 P.2d 1059] [directed verdict]; *Crouch* v. *Gilmore Oil Co., Ltd.,* 5 Cal.2d 330 [54 P.2d 709] [nonsuit]; *Ceranski* v. *Muensch,* 60 Cal.App.2d 751 [141 P.2d 750] [directed verdict]; *Johnston* v. *Black Co.,* 33 Cal.App.2d 363 [91 P.2d 921] [insufficiency of evidence].)

The testimony which defendants claim dispels the inference of res ipsa loquitur as a matter of law was elicited from witnesses called under section 2055 of the Code of Civil Procedure,[2] and plaintiff contends that such evidence cannot be used in ruling on a nonsuit to dispel an inference on which plaintiff relies. Section 2055 provides in effect that a party to a civil action may be examined as if under cross-examination by the adverse party and that the party examining such witness shall not be bound by the witness' testimony and may rebut it by other evidence. Before section 2055 was enacted, a litigant who called an adverse party to testify found that the witness was treated as his own and that his

---

[2]Section 2055 of the Code of Civil Procedure provides: "A party to the record of any civil action or proceeding or a person for whose immediate benefit such action or proceeding is prosecuted or defended, or the directors, officers, superintendent, member, agent, employee, or managing agent of any such party or person, or the agent, officer or employee of a municipal corporation which is a party to the action or proceeding, may be examined by the adverse party as if under cross-examination, subject to the rules applicable to the examination of other witnesses. The party calling such adverse witness shall not be bound by his testimony, and the testimony given by such witness may be rebutted by the party calling him for such examination by other evidence. Such witness, when so called, may be examined by his own counsel, but only as to the matters testified to on such examination."

examination was restricted by the rules applicable to direct examination. (See *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540, 555 [299 P. 529].) ▆ This rule was changed by section 2055 so that testimony elicited by a plaintiff under this section is not treated as testimony of his own witnesses but as testimony obtained under cross-examination of the defendant's witnesses. (*Smellie* v. *Southern Pac. Co.*, 212 Cal. 540, 556 [299 P. 529]; *Figari* v. *Olcese*, 184 Cal. 775, 782 [195 P. 425, 15 A.L.R. 192].) ▆ It is clear, however, that all such testimony is evidence in the case and that the provision in the section that a party calling an adverse witness shall not be bound by his testimony does not mean that such testimony may not be given its proper weight, "but, merely, as it declares, that the party calling such witness shall not be concluded from rebutting his testimony or from impeaching the witness." (*Figari* v. *Olcese,* 184 Cal. 775, 782 [195 P. 425, 15 A.L.R. 192]; see *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540, 559 [299 P. 529]; *Dempsey* v. *Star House Movers, Inc.*, 2 Cal.App.2d 720, 722 [38 P.2d 825]; 13 Cal.L.Rev. 302.[3])

▆ It has been squarely held that an inference upon which a plaintiff relies may be completely dispelled as a matter of law by evidence given by witnesses called under section 2055. (*Crouch* v. *Gilmore Oil Co., Ltd.*, 5 Cal.2d 330 [54 P.2d 709].) In the Crouch case an inference that one Smith was an agent of defendant arose from proof of the fact that the defendant's advertising insignia was painted on trucks operated by Smith. Evidence was adduced under section 2055 which the court found dispelled the inference as a matter of law, and it was held that a nonsuit was proper.

Our decision in *Crowe* v. *McBride,* 25 Cal.2d 318 [153 P.2d 727], is not inconsistent with the holding in the Crouch case. As will be seen from an examination of the opinion in *Crowe* v. *McBride,* the point involved was whether the evidence was sufficient to present a question for the trier of fact, and in this connection we held that the testimony of the defendant given pursuant to an examination under section 2055 was evidence in the case and could be used to establish a cause of action against him. The use of evidence elicited

---

[3]In an article entitled "Some Recent Cases in Evidence," 13 Cal. L.Rev. 285, 302 (1925), Professor A. M. Kidd, in commenting on section 2055, said: "The section states that a party calling such adverse party shall not be bound by his testimony, as if a party were ever bound by the testimony of any witness. What was meant was that an adverse party called as a witness might be examined and impeached to the same extent as the ordinary witness."

under section 2055 to dispel an inference was not involved. Plaintiff, however, relies upon the following language in *Crowe* v. *McBride, supra*: ''In considering the propriety of the nonsuit, we must accept the evidence most favorable to plaintiffs and disregard that which is unfavorable. The testimony of the defendant, who was called to testify under section 2055 of the Code of Civil Procedure, falls within this rule and is to be treated as evidence in the case insofar as it is favorable to plaintiffs.'' This language must, of course, be read in the light of the facts of the case and the question presented for determination. It is correct as a general proposition, and it should not be given a strained interpretation to reach a conclusion on a matter not presented to or considered by the court.

Cases involving the use of evidence adduced under section 2055 to dispel a *presumption* must be distinguished from those involving *inferences*. ▉ Generally speaking, it may be said that a presumption is dispelled as a matter of law only when a fact which is wholly irreconcilable with it is proved by the uncontradicted testimony of the *party relying on it or of such party's own witnesses.*[4] (*Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1, 9 [210 P. 269]; *Steward* v. *Paige*, 90 Cal.App.2d 820, 825 [203 P.2d 858]; see *Chakmakjian* v. *Lowe*, 33 Cal.2d 308, 313 [201 P.2d 801]; *Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal.2d 64, 70 [77 P.2d 1059]; *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540, 552 [299 P. 529]; *cf. Mundy* v. *Marshall*, 8 Cal.2d 294, 296 [65 P.2d 65]; *Levin* v. *Brown*, 81 Cal.App.2d 913, 917 [185 P.2d 329].)

▉ Accordingly, it is the general rule that a *presumption* favorable to a plaintiff cannot be so dispelled by the testimony of a defendant given pursuant to section 2055 because a defendant called under that section is not treated as the plaintiff's witness. (*Smellie* v. *Southern Pac. Co.*, 212 Cal. 540, 559 [299 P. 529]; *Lopez* v. *Knight*, 121 Cal.App.2d 387, 390-391 [263 P.2d 452]; *Green* v. *Uarte*, 87 Cal.App.2d 75,

[4]There is a recognized exception to the general rule where evidence of the *opposite* party is absolutely conclusive, as for instance, where the presumption of death of a person who has not been heard from in seven years is dispelled by production of the person in court. (See *Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal.2d 64, 70 [77 P.2d 1079]; *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540, 552 [299 P. 529].) The general rule also is subject to the qualification that where testimony of the party relying on a presumption or of his witnesses is the product of mistake or inadvertence, such testimony will not operate to dispel the presumption. (See *Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1, 9 [210 P. 269].)

78-79 [196 P.2d 63]; see *Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal.2d 64, 70 [77 P.2d 1059].) On the other hand, as we have seen, an *inference* can be dispelled as a matter of law by evidence produced by *either* party.

It follows from what has been said that the testimony of a witness called by a plaintiff under section 2055 may be used to dispel an inference upon which the plaintiff relies, provided the evidence is clear, positive, uncontradicted and of such a nature that it cannot rationally be disbelieved. It is particularly appropriate to allow such testimony to be used to rebut the inference in cases like the present where plaintiff, because she was unconscious while receiving the treatment that resulted in her injuries, is given the benefit of a liberalized test for res ipsa loquitur, and all persons who had any control over her body or the instrumentalities which might have caused her injuries are required to meet the inference of negligence by giving an explanation of their conduct. If in these circumstances evidence given by witnesses under section 2055 establishes as a matter of law that one of the defendants is free from negligence, the prima facie case against that defendant based on the inference should fall, and plaintiff's position with respect to that defendant should be the same as if she had failed to prove all the facts necessary to raise the inference.

A witness may, of course, be disbelieved if there is any rational ground for doing so, and the interest of a party in the result of a case will in some circumstances justify the trier of fact in disregarding his testimony. (See *Hamilton* v. *Abadjian*, 30 Cal.2d 49, 53 [179 P.2d 804]; *Hicks* v. *Reis*, 21 Cal.2d 654, 659-661 [134 P.2d 788]; *Blank* v. *Coffin*, 20 Cal.2d 457, 461-462 [126 P.2d 868].) There are situations, however, where the interest of a party in obtaining a judgment favorable to himself will not render all of his testimony subject to disbelief. For example, where part of a defendant's testimony is harmful to him but favorable to a codefendant, as where it tends to show that the witness is liable or makes it more difficult for him to establish his own lack of fault, that portion of his testimony may be used to rebut an inference unfavorable to the codefendant provided there is nothing to indicate collusion or any other reason for disbelieving the testimony.

The evidence as to Eiskamp's participation in the operation consisted of the testimony of Lacy, Slegal and Eiskamp, and it was clear and uncontradicted to the effect

that Eiskamp was not responsible for leaving the clamp in plaintiff's abdomen. This testimony did not in any way tend to benefit Lacy or Slegal but, to the contrary, was disadvantageous to them because the exoneration of one defendant would have the necessary effect of increasing the possibility of liability on the part of each of the other defendants. The record indicates no rational ground for disbelieving their testimony, and we hold that the inference raised against Eiskamp under the doctrine of res ipsa·loquitur was dispelled as a matter of law.

The evidence, however, does not compel the conclusion that the inference of negligence on the part of the surgical nurse and the hospital has been dispelled. The testimony relied upon to absolve them was given by Craig, who was a hospital employee and who, in view of the advantages to her of maintaining a favorable relationship with the hospital, obviously had an interest in the outcome of the case. She likewise had an interest in the litigation as to the nurse because the hospital, as employer, would be liable for acts of the nurse within the scope of her employment. Craig's testimony could therefore be disbelieved by the trier of fact. (See *Hamilton* v. *Abadjian,* 30 Cal.2d 49, 53 [179 P.2d 804]; *Hicks* v. *Reis,* 21 Cal.2d 654, 659-661 [134 P.2d 788]; *Blank* v. *Coffin,* 20 Cal.2d 457, 461-462 [126 P.2d 868].)

Moreover, if Craig's testimony were accepted by the trier of fact as being true, it is not of the character required to dispel the inference of negligence raised against the hospital and the nurse. As we have seen, Craig testified that it was the practice of hospitals in the area to count sponges and needles as part of the operative procedure, and with respect to "other implements" she stated there was "no established practice of instrument counting either before or after surgery." Even if we assume she intended to say that it was the practice *not* to count instruments, this evidence would not conclusively establish that the hospital and nurse were free from negligence. These defendants seek to avoid liability on the theory that they were required to exercise only that degree of skill employed by other hospitals and nurses in the community. It is a matter of common knowledge, however, that no special skill is required in counting instruments. Although under such circumstances proof of practice or custom is some evidence of what should be done and may assist in the determination of what constitutes due care, it does not conclusively establish the standard of care. (*Cf. Ales*

v. *Ryan,* 8 Cal.2d 82, 100 [64 P.2d 409] ; *Barham* v. *Widing,* 210 Cal. 206, 216 [291 P. 173] ; *Anderson* v. *Stump,* 42 Cal. App.2d 761, 765 [109 P.2d 1027] ; *Inderbitzen* v. *Lane Hospital,* 124 Cal.App. 462, 467 [12 P.2d 744, 13 P.2d 905].)

"General negligence cannot be excused on the ground that others in the same locality practice the same kind of negligence." (*Ales* v. *Ryan,* 8 Cal.2d 82, 100 [64 P.2d 409].)

We cannot say as a matter of law that there was no duty on the part of the hospital and nurses to keep an instrument count in order to assist the surgeon in determining whether all instruments used had been removed from the patient before final closure.

The judgment is affirmed as to defendant Eiskamp and is reversed as to defendants Pogatschnik and Watsonville Community Hospital.

Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

CARTER, J.—Concurring and Dissenting.—The holding of the majority opinion may be epitomized as follows: An inference of negligence which arises from testimony of adverse witnesses examined under section 2055 of the Code of Civil Procedure may be dispelled by such testimony even though plaintiff is *not bound* thereby and is entitled to rely upon all of such testimony which is favorable to her and disregard all that is unfavorable. The unsoundness of this holding is so obvious that the mere statement of it should disclose its absurdity. It is not only directly in conflict with the statutory law of this state (Code Civ. Proc., § 2055) but countless decisions of this court and of the appellate courts of the state. It is sheer double talk to say that evidence which is *not binding* upon a party may be relied upon to repel or dispel other evidence—an inference—in favor of such party.

Section 2055 of the Code of Civil Procedure provides that "A party to the record of any civil action or proceeding or a person for whose immediate benefit such action or proceeding is prosecuted or defended . . . may be examined by the adverse party as if under cross-examination, subject to the rules applicable to the examination of other witnesses. *The party calling such adverse witness shall not be bound by his testimony, and the testimony given by such witness may be rebutted by the party calling him for such examination by*

*other evidence. . . ."* (Emphasis added.) After noting that the questions presented in the case at bar were whether an inference of negligence was raised under the doctrine of res ipsa loquitur and whether, if such an inference arose, it was dispelled as a matter of law, we find this statement in the majority opinion:

"Evelyn Craig, who was superintendent of the hospital, and defendants Lacy, Slegal and Eiskamp were called by plaintiff to testify under section 2055 of the Code of Civil Procedure, *which provides that in a civil action a party may call and examine an adverse witness."* (Emphasis added.) Section 2055 of the Code of Civil Procedure provides a great deal more than the above quoted misleading statement would lead one to believe. In discussing the effect of section 2055, the following statement from the majority opinion is of interest: "Section 2055 provides in effect that a party to a civil action may be examined as if under cross-examination by the adverse party and that the party examining such witness shall not be bound by the witness' testimony and may rebut it by other evidence. Before section 2055 was enacted, a litigant who called an adverse party to testify found that the witness was treated as his own and that his examination was restricted by the rules applicable to direct examination. (See *Smellie* v. *Southern Pac. Co.,* 212 Cal. 540, 555 [299 P. 529].) This rule was changed by section 2055 so that testimony elicited by a plaintiff under this section is not treated as testimony of his own witness but as testimony obtained under cross-examination of the defendant's witnesses. (*Smellie* v. *Southern Pac. Co.,* 212 Cal. 540, 556 [299 P. 529] ; *Figari* v. *Olcese,* 184 Cal. 775, 782 [195 P. 425, 15 A.L.R. 192].)" The just quoted excerpt from the majority is more than misleading—and the cases cited do not stand for the proposition for which they are cited. For illustration, in the Smellie case, *supra,* at page 556, we find this court stating that section 2055 "is a statute remedial in character, and as such should receive a construction by the courts which will carry into effect and accomplish the intent and purpose of the legislature in enacting it. *This intent was, as we read the section, to enable a party to an action to call an adverse party as a witness for the purpose of eliciting such facts as said witness may testify to which are favorable to the party calling him, without being bound by any adverse testimony which said witness may give.* Only by such construction can the full remedial purposes of said

legislation be effected. Not only so, but we think the express terms of said section clearly and plainly indicate that such was the purpose of the legislature in the enactment of said section. As before noted, the adverse party, when called as a witness, is examined by the party calling him 'as if under cross-examination' *and* the party calling him 'shall not be bound by his testimony.' It is difficult to conceive of language more direct and explicit.'' The Smellie case involved a directed verdict. In the Figari case, a trial on the merits was involved and the court there held that ''This provision [2055] does not mean that such testimony may not be given its proper weight, but merely, as it declares, that the party calling such witness shall not be concluded from rebutting his testimony, or from impeaching the witness. (*Dravo* v. *Fabel,* 132 U.S. 487 [33 L.Ed. 421, 10 S.Ct. 170, see, also, Rose's U.S. Notes].)'' In *Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 625 [255 P.2d 785], a majority of this court specifically held that ''Plaintiffs maintain that 'the instruction should have explained that any such testimony elicited by the plaintiffs should weigh for them insofar as it was favorable, *but that it should be disregarded insofar as it was unfavorable,* if the matters to which it referred were not satisfactorily established by other evidence.' (Emphasis added.) But plaintiffs are relying upon authorities involving rulings upon a motion either for a nonsuit (*Marchetti* v. *Southern Pac. Co.,* 204 Cal. 679, 686 [269 P. 529] ; *Dempsey* v. *Star House Movers, Inc.,* 2 Cal.App.2d 720, 722 [38 P.2d 825]) or for a directed verdict (*Smellie* v. *Southern Pac. Co.,* 212 Cal. 540, 556 [299 P. 529] ; *People* v. *Mahoney,* 13 Cal.2d 729, 736 [91 P.2d 1029]). The rules therein stated have no application upon submission of the case for a determination of the factual issues on the merits. (*Figari* v. *Olcese,* 184 Cal. 775, 782 [195 P. 425, 15 A.L.R. 192] ; *Dorn* v. *Pichinino,* 105 Cal.App.2d 796, 800 [234 P.2d 307].) The distinction is noted in the Smellie case, where, after a full discussion, it is stated that testimony elicited under section 2055 'is, of course, evidence in the case and may be considered in determining the issues of the case upon the trial or final hearing by the court, or if the case is before a jury, by the jury.' (212 Cal. 559; see, also, *Green* v. *Newmark,* 136 Cal.App. 32, 37-38 [28 P.2d 395] ; *Balasco* v. *Chick,* 84 Cal.App.2d 802, 808 [192 P.2d 76].) Since this case was submitted to the jury on the merits, the assailed instruction was proper. (*Joseph* v. *Vogt,* 35 Cal.App.2d 439, 441 [95 P.2d 947] ;

*Cloud* v. *Market Street Ry. Co.,* 74 Cal.App.2d 92, 96 [168 P.2d 191].)'' *Dempsey* v. *Star House Movers, Inc.,* 2 Cal. App.2d 720 [38 P.2d 825], was an appeal from a judgment of nonsuit. The court there, however, declared that testimony taken by plaintiff under section 2055 was not binding on the plaintiffs but could so far as it was favorable be considered together with other evidence favorable to plaintiffs. The court concluded: ''There was no evidence binding on plaintiffs on the basis of which the trial court could hold that deceased was guilty of contributory negligence as a matter of law. The motion for nonsuit should have been denied. (*Marchetti* v. *Southern Pacific Co.,* 204 Cal. 679 [269 P. 529].)''

We are presently concerned with an appeal from an order granting a nonsuit.

Every member of this court has, at one time or another, relied upon and stated the rule of law applicable when a motion for a nonsuit is made: '' 'A motion for nonsuit may properly be granted . . . ''when, and only when, *disregarding conflicting evidence,* and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.'' . . . ''Unless it can be said as a matter of law, that . . . no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury.'' . . .' '' (*Seneris* v. *Haas,* 45 Cal.2d 811, 821 [291 P.2d 915]; Carter, J.) In *Hinds* v. *Wheadon,* 19 Cal.2d 458, 460 [121 P.2d 724], Mr. Chief Justice Gibson in speaking for the court, said: ''Where a judgment is rendered upon a motion for nonsuit, the court must assume that all evidence received in favor of the plaintiff relevant to the issues is *true.* All *presumptions, inferences* and doubtful questions must be construed most favorably to the plaintiff. . . . In such [res ipsa loquitur] cases an inference arises that the accident resulted from a want of proper care on the part of the defendants. . . . It is incumbent upon the defendant in such a case to bring forth evidence to rebut the inference of negligence, and under such circumstances a nonsuit is improper since the case should be submitted to the jury.'' (Emphasis added.) Mr.

Justice Shenk, speaking for the court in *Milana* v. *Credit Discount Co.*, 27 Cal.2d 335 [163 P.2d 869, 165 A.L.R. 621], approved and relied upon the rule; in *Golceff* v. *Sugarman*, 36 Cal.2d 152 [222 P.2d 665], and *Raber* v. *Tumin*, 36 Cal.2d 654 [226 P.2d 574], Mr. Justice Schauer, speaking for the court, approved and relied upon the rule; in *Easton* v. *Ash*, 18 Cal.2d 530 [116 P.2d 433], Mr. Justice Traynor, speaking for the court, approved and relied upon the rule; in *Palmquist* v. *Mercer*, 43 Cal.2d 92, 95 [272 P.2d 26], Mr. Justice Spence, speaking for the court, approved and relied upon the rule; in *Aguirre* v. *City of Los Angeles*, 46 Cal.2d 841 [299 P.2d 862], Mr. Justice McComb, speaking for the court, approved and relied upon the rule.

The above stated rule has been so firmly embedded in the law of this state, that I find it incomprehensible that a majority of the members of this court should fail to realize that the above cases, and those following (to cite but a *very few*) will be overruled sub silento! (For statements and restatements of the rule, see: *Schaufele* v. *Doyle* (1890), 86 Cal. 107 [24 P. 834]; *Archibald Estate* v. *Matteson* (1907), 5 Cal.App. 441 [90 P. 723]; *Hercules Oil etc. Co.* v. *Hocknell* (1907), 5 Cal.App. 702 [91 P. 341]; *Leitch* v. *Marx* (1913), 21 Cal.App. 208 [131 P. 328]; *Fildew* v. *Shattuck & Nimmo W. Co.* (1918), 39 Cal.App. 42 [177 P. 866]; *Scott* v. *Sciaroni* (1924), 66 Cal.App. 577 [226 P. 827]; *Dawson* v. *Tulare Union High Sch.* (1929), 98 Cal.App. 138 [276 P. 424]; *Nicholas* v. *Jacobson* (1931), 113 Cal.App. 382 [298 P. 505]; *Green* v. *Newmark* (1933), 136 Cal.App. 32 [28 P.2d 395]; *Cash* v. *Los Angeles Ry. Corp.* (1935), 6 Cal.App.2d 738 [45 P.2d 280]; *Estate of Cushing* (1939), 30 Cal.App.2d 340 [86 P.2d 375]; *Knecht* v. *Lombardo* (1939), 33 Cal.App.2d 447 [91 P.2d 917]; *Kersten* v. *Young* (1942), 52 Cal.App.2d 1 [125 P.2d 501]; *Estate of Rabinowitz* (1943), 48 Cal.App.2d 106 [135 P.2d 579]; *MacDonald* v. *Jackson* (1953), 117 Cal.App.2d 598 [256 P.2d 591]; *Sanders* v. *MacFarlane's Candies* (1953), 119 Cal.App.2d 497 [259 P.2d 1010]; *Lehman* v. *Richfield Oil Corp.* (1953), 121 Cal.App.2d 261 [263 P.2d 13]; and, more recently, *Palmquist* v. *Mercer*, 43 Cal.2d 92 [272 P.2d 26]; *Dunn* v. *Pacific Gas & Elec. Co.*, 43 Cal.2d 265 [272 P.2d 745]; *McBride* v. *Atchison, T. & S. F. Ry. Co.*, 44 Cal.2d 113 [279 P.2d 966]; *Warner* v. *Santa Catalina Island Co.*, 44 Cal.2d 310 [282 P.2d 12]; *Hilyar* v. *Union Ice Co.*, 45 Cal.2d 30 [286 P.2d 21]; *Raymond* v. *Independent Growers, Inc.*, 133 Cal. App.2d 154 [284 P.2d 57]; *Hale* v. *Safeway Stores, Inc.*, 129

Cal.App.2d 124 [276 P.2d 118] ; *Copeland* v. *Rabing,* 110 Cal.App.2d 631 [243 P.2d 119] ; *Finley* v. *City & County of San Francisco,* 115 Cal.App.2d 116 [251 P.2d 687] ; *Turner* v. *Ralph M. Parsons Co.,* 117 Cal.App.2d 109 [254 P.2d 970] ; *Zar* v. *Alafetich,* 126 Cal.App.2d 643 [272 P.2d 922] ; *Weber* v. *Marine Cooks' & Stewards' Assn.,* 123 Cal.App.2d 328 [266 P.2d 801] ; *Markwell* v. *Swift & Co.,* 126 Cal.App.2d 245 [272 P.2d 47] ; *Powell* v. *Jones,* 133 Cal.App.2d 601 [284 P.2d 856] ; *Katemis* v. *Westerlind,* 120 Cal.App.2d 537 [261 P.2d 553] ; *Hughes* v. *Oreb,* 36 Cal.2d 854 [228 P.2d 550] ; *Denbo* v. *Weston Inv. Co.,* 112 Cal.App.2d 153 [245 P.2d 650] ; *Estate of Jamison,* 41 Cal.2d 1 [256 P.2d 984] ; *Howard* v. *General Petroleum Corp.,* 108 Cal.App.2d 25 [238 P.2d 145] ; *Hellar* v. *Bianco,* 111 Cal.App.2d 424 [244 P.2d 757, 28 A.L.R.2d 1451] ; *Sweet* v. *Markwart,* 115 Cal.App.2d 735 [252 P.2d 751] ; *Adams* v. *Henning,* 117 Cal.App.2d 376 [255 P.2d 456] ; *MacDonald* v. *Jackson,* 117 Cal.App.2d 598 [256 P.2d 591] ; *Marino* v. *Valenti,* 118 Cal.App.2d 830 [259 P.2d 84] ; *Refinite Sales Co.* v. *Fred R. Bright Co.,* 119 Cal.App.2d 56 [258 P.2d 1116] ; *Warren* v. *Roos,* 127 Cal.App.2d 224 [273 P.2d 569].)

In the case under consideration an inference of negligence arose because of the proved fact that a foreign body, a Kelly clamp, was left in plaintiff's abdomen after she had undergone surgery performed by defendants in defendant hospital. The clamp was not there prior to the surgery. That fact was proved by X-rays taken prior to the time the surgery was undertaken. In *Seneris* v. *Haas,* 45 Cal.2d 811, 825 [291 P.2d 915], we said, quoting from *Ybarra* v. *Spangard,* 25 Cal.2d 486, 491, 492 [154 P.2d 687, 162 A.L.R. 1258], that ''Every defendant in whose custody the plaintiff was placed for any period was bound to exercise ordinary care to see that no unnecessary harm came to him and each would be liable for failure in this regard.'' We also said (45 Cal.2d at p. 826) that ''where a plaintiff receives unusual injuries while unconscious and in the course of medical treatment, all those defendants who had *any control over his body or the instrumentalities which might have caused the injuries may properly be called upon to meet the inference of negligence by giving an explanation of their conduct.''* (Emphasis added.) In *Summers* v. *Tice,* 33 Cal.2d 80, 86, 87 [199 P.2d 1, 5 A.L.R.2d 91], speaking of an analogous situation, we said that ''a patient injured while unconscious on an operating table in a hospital could hold all or any of the persons who had any connection with the operation even though he could not select

the particular acts by the particular person which led to his disability.'' In the Ybarra case we held that the effect of the decision therein was that plaintiff had made out a case when he had produced evidence which gave rise to an inference of negligence which was the proximate cause of the injury; *that it was then up to the defendants to explain the cause of the injury.*

Plaintiff here alleged and proved that Drs. Lacy, Slegal, Eiskamp, Nurse Pogatschnik and the Watsonville Community Hospital had control of her unconscious person during abdominal surgery; that during that surgery a Kelly clamp— a foreign object—was left in her abdomen causing her pain, suffering and injury. Having proved that much, an inference of negligence arose and the duty immediately devolved upon the defendants to rebut that inference of negligence or become liable to plaintiff in damages. In order to rebut the inference of negligence, the defendants must make ''an affirmative showing of a definite cause for the accident, in which cause no element of negligence on the part of the defendant adheres, or of such care in all possible respects as necessarily to lead to the conclusion that the accident could not have happened from want of care, but must have been due to some unpreventable cause, although the exact cause is unknown.'' (*Dierman* v. *Providence Hospital,* 31 Cal.2d 290, 295 [188 P.2d 12].)

In *Scott* v. *Burke,* 39 Cal.2d 388 [247 P.2d 313], this court adopted the holding of *Ales* v. *Ryan,* 8 Cal.2d 82, 99 [64 P.2d 409], that ''the inference of negligence which is created by the rule *res ipsa loquitur is in itself evidence which may not be disregarded by the jury and which in the absence of any other evidence as to negligence, necessitates a verdict in favor of the plaintiff.*'' (Emphasis added.)

The majority admits, as necessarily it must, that the res ipsa loquitur rule is applicable here and that an inference of negligence arose as to *all* these defendants. Despite this admission, the majority holds that *evidence elicited under section 2055 of the Code of Civil Procedure may be considered and used to dispel the inference of negligence* which arose as to Dr. Eiskamp.

In so holding, the author of the majority opinion ignores the full impact of the rule set forth in the case of *Crowe* v. *McBride,* 25 Cal.2d 318, 319 [153 P.2d 727], in which he, speaking for this court, said: ''In considering the propriety of the nonsuit, we must accept the evidence most favorable

to plaintiffs and disregard that which is unfavorable. *The testimony of the defendant, who was called to testify under section 2055 of the Code of Civil Procedure, falls within this rule and is to be treated as evidence in the case insofar as it is favorable to plaintiffs.* (*Anderson* v. *Stump,* 42 Cal.App. 2d 761 [109 P.2d 1027] ; *Dempsey* v. *Star House Movers, Inc.,* 2 Cal.App.2d 720 [38 P.2d 825] ; *cf. People* v. *Mahoney,* 13 Cal.2d 729 [91 P.2d 1029] [motion for directed verdict] ; *Smellie* v. *Southern Pacific Co.,* 212 Cal. 540 [299 P. 529].)'' (Emphasis added.) It has been said time and time again that the rule is well established that on appeal from judgments of nonsuit, the plaintiff has a right to rely on *such portions* of defendants' testimony elicited under section 2055 of the Code of Civil Procedure *as are favorable to her and to disregard the unfavorable portions thereof.* (Code Civ. Proc., § 2055; *Crowe* v. *McBride, supra*; *Karstensen* v. *Western Transp. Co.,* 93 Cal.App.2d 435 [209 P.2d 47] ; *Williams* v. *Freeman,* 35 Cal.App.2d 104 [94 P.2d 817] ; *Young* v. *Bank of America,* 95 Cal.App.2d 725 [214 P.2d 106, 16 A.L.R.2d 1155] ; *Connors* v. *Southern Pac. Co.,* 91 Cal.App.2d 872 [206 P.2d 31] ; *Green* v. *Uarte,* 87 Cal.App.2d 75, 77 [196 P.2d 63] ; *Carlton* v. *Pacific Coast Gasoline Co.,* 110 Cal.App.2d 177 [242 P.2d 391] ; *Marino* v. *Valenti,* 118 Cal.App.2d 830 [259 P.2d 84] ; *Lopez* v. *Knight,* 121 Cal.App.2d 387 [263 P.2d 452] ; *Refinite Sales Co.* v. *Fred R. Bright Co.,* 119 Cal.App. 2d 56 [258 P.2d 1116] ; *Estate of Hull,* 63 Cal.App.2d 135 [146 P.2d 242] ; *Estate of Burns,* 26 Cal.App.2d 741 [80 P.2d 77] ; *Hiner* v. *Olson,* 23 Cal.App.2d 227 [72 P.2d 890, 73 P.2d 945] ; *Whicker* v. *Crescent Auto Co.,* 20 Cal.App.2d 240 [66 P.2d 749] ; *Estate of Lances,* 216 Cal. 397 [14 P.2d 768] ; *Lewis* v. *Southern Calif. Edison Co.,* 116 Cal.App. 44 [2 P.2d 419], and others too numerous to mention.)

We are now told that it has been ''squarely held that an inference upon which a plaintiff relies may be completely dispelled as a matter of law by evidence given by witnesses called under section 2055. (*Crouch* v. *Gilmore Oil Co., Ltd.,* 5 Cal.2d [330] 333 [54 P.2d 709].)''

In *Crouch* v. *Gilmore Oil Co., Ltd., supra,* an appeal from a judgment of nonsuit was involved. Plaintiff there sought to establish the issue of agency by defendant's testimony under section 2055. Plaintiff proved that the truck in question, while different in construction from that used by Gilmore Oil Company, was painted by Gilmore Oil with the colors used

by it and 4,500 of its service station operators on the Pacific Coast. Gilmore Oil also painted the sides of the truck with the word "Gilmore" and placed its advertising insignia of the lion's head on the rear of the truck. On the doors of the truck were, however, painted the words "Owens Valley Oil Company." Gilmore Oil sold Smith, the owner of the truck, its gasoline at a lower price. Testimony elicited under section 2055 showed that the driver of the truck was paid by Smith, the owner. The court held, *specifically on the authority of Maupin v. Solomon, 41 Cal.App. 323* [183 P. 198], that the inference of agency was rebutted by uncontradicted testimony given under section 2055.

*Maupin v. Solomon, supra,* involved an appeal from a judgment for the plaintiff after a trial on the merits, and the court held, merely, that an inference that the driver of defendant's car was acting within the scope of his employment could not stand in the face of uncontradicted evidence to the contrary. *Testimony adduced under section 2055 was not involved and it was not an appeal from either a nonsuit or a directed verdict.*

It is my opinion that the Crouch case was incorrectly decided. The evidence on the issue of agency was sufficiently conflicting to make it a question of fact for the jury. Plaintiff was not bound by the testimony under section 2055 which was contrary to the inference arising from the facts above set forth. Furthermore, I do not see how Mr. Chief Justice Gibson can cite, with approval, the Crouch case in view of his opinion in *Crowe v. McBride,* 25 Cal.2d 318, 319 [153 P.2d 727],* wherein he said, in speaking for the court: "In considering the propriety of the nonsuit, we must accept the evidence most favorable to plaintiffs and disregard that which is unfavorable. *The testimony of the defendant, who was called to testify under section 2055 of the Code of Civil Procedure, falls within this rule and is to be treated as evidence in the case insofar as it is favorable to plaintiffs.*" (Emphasis added.) It would appear that the Crouch case was effectively overruled for all purposes by *Crowe v. McBride, supra,* and the many other better reasoned cases both prior and subsequent thereto. In his analysis of *Crowe v. McBride, supra,* the author of the majority opinion conveniently omits any mention of the case of *Burr v. Sherwin Williams Co.,* 42 Cal.2d 682, 688, 691 [268 P.2d 1041], where-

---

*Even though he maintains it is *not* inconsistent.

in he, speaking for the court, said "It is settled, of course, that res ipsa loquitur raises an inference, not a presumption, and the general rule is that whether a particular inference shall be drawn is a question of fact for the jury, even in the absence of evidence to the contrary. (See Code Civ. Proc., § 1958; *Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868]; *Hamilton* v. *Pacific Elec. Ry. Co.*, 12 Cal.2d 598, 602-603 [86 P.2d 829].) *This, however, does not preclude the conclusion that res ipsa loquitur may give rise to a special kind of inference which the defendant must rebut, although the effect of the inference is somewhat akin to that of a presumption.*" (Emphasis added.)

Also in his endeavor to distinguish the *Crowe* v. *McBride* case from the Crouch case (to the detriment of the Crowe case), the author of the majority opinion informs us that the quotation from the Crowe case "must, of course, be read in the light of the facts of the case and the question presented for determination. It is correct as a general proposition, and it should not be given a strained interpretation to reach a conclusion on a matter not presented to or considered by the court." This statement is grossly inaccurate. *Crowe* v. *McBride* involved an action for malpractice; defendant chiropractor's motion for a nonsuit was granted. The appeal was from the order granting the nonsuit. Defendant's testimony under 2055 was treated as evidence in the case *insofar as it was favorable to plaintiffs* and we reversed the judgment of nonsuit. It was, therefore, not necessary to give the language used there "a strained interpretation to reach a conclusion on a matter not presented to or considered by the court."

The majority opinion makes much of the fact that the doctrine of res ipsa loquitur raises an inference rather than a presumption and that a presumption may not be dispelled by evidence produced by an adverse party, whereas an inference may be so dispelled. In *Burr* v. *Sherwin Williams Co.*, *supra*, the author of this opinion specifically held that the doctrine of res ipsa loquitur gave rise to a "special kind of inference" which the *defendant* must rebut and that the effect of this particular inference was "somewhat akin to that of a presumption"!

The law in this state has, until the case at bar, always been that on a motion for a nonsuit all evidence elicited under section 2055 which is unfavorable to the plaintiff must be disregarded. (*Green* v. *Uarte*, 87 Cal.App.2d 75 [196 P.2d 63]; *Jeppi* v. *Brockman Holding Co.*, 34 Cal.2d 11 [206 P.2d

847, 9 A.L.R.2d 1297] ; *Karstensen* v. *Western Transp. Co.,* 93 Cal.App.2d 435 [209 P.2d 47] ; *Young* v. *Bank of America,* 95 Cal.App.2d 725 [214 P.2d 106, 16 A.L.R.2d 1155] ; *Refinite Sales Co.* v. *Fred R. Bright Co.,* 119 Cal.App.2d 56 [258 P.2d 1116] ; *Batchelor* v. *Caslavka,* 128 Cal.App.2d 819 [276 P.2d 64] ; and others too numerous to mention.) The *only* case relied upon by the majority for the proposition that an inference may be dispelled as a matter of law by testimony taken under section 2055 is the case of *Crouch* v. *Gilmore Oil Co., Ltd.,* 5 Cal.2d 330 [54 P.2d 709]. The Crouch case did not involve the inference of res ipsa loquitur which is an inference of a character that is ''akin to that of a presumption'' but involved an inference that defendant truck driver was the agent of Gilmore Oil Company.

It appears to me that the majority opinion has thoroughly confused the issue. It ignores cases where the inference of res ipsa loquitur was involved and the holding therein that testimony taken under section 2055, *insofar as it is favorable to plaintiffs,* remains in the case until rebutted by the defendant; it ignores the time-honored rule where an appeal from a judgment of nonsuit is involved; it makes misleading statements and cites cases in support thereof which are not in point. As another example, the statement in the majority opinion that ''The same test is applicable in determining when the res ipsa loquitur inference is dispelled as a matter of law as in deciding when any other inference is conclusively rebutted. (See *Rose* v. *Melody Lane,* 39 Cal.2d 481, 487 [247 P.2d 335] ; *Leet* v. *Union Pac. R. R. Co.,* 25 Cal.2d 605, 621-622 [155 P.2d 42, 158 A.L.R. 1008].)'' This follows the statement of plaintiff's contention that the inference of res ipsa loquitur was not dispelled as a matter of law and that therefore the court erred in granting the motion for a *nonsuit.*

Both the Rose and Leet cases were appeals from judgments rendered *after a trial on the merits.* Neither one involved an appeal from a judgment of nonsuit. Then the author of the majority opinion makes this statement: ''There is, however, a qualification on this broad general rule [the rule on appeal where a nonsuit is involved]. It is settled that where the evidence raises an inference that a fact exists, and either party produces evidence of the nonexistence of the fact that is clear, positive, uncontradicted and of such a nature that it cannot rationally be disbelieved, the nonexistence of the fact is established as a matter of law. (See *Blank* v. *Coffin,* 20 Cal.2d 457, 461 [126 P.2d 868].)'' In *Blank* v. *Coffin,*

*supra,* an appeal from a directed verdict was reversed by this court. It was there held: "It is not always possible for a party to a lawsuit to introduce evidence directly bearing upon the existence of a fact that he is attempting to prove. The evidence available to him may serve only to establish the existence of certain primary facts that are logically connected with the material fact. If a jury can reasonably infer from these primary facts that the material fact exists, the party has introduced sufficient evidence to entitle him to have the jury decide the issue. The *jury* is not compelled to draw the inference, however, even in the absence of contrary evidence and may refuse to do so. Whether a particular inference can be drawn from certain evidence is a question of law, but whether the inference shall be drawn, in any given case, is a question of fact for the *jury*. (See cases cited in 10 Cal.Jur. 738-739, § 60.)

"Usually, the opposing party introduces evidence as to the nonexistence of the fact in issue, and the *jury* must then determine the existence or nonexistence of the fact from all the evidence before it. If the evidence contrary to the existence of the fact is clear, positive, uncontradicted, and of such a nature that it can not rationally be disbelieved, the court must instruct the jury that the nonexistence of the fact has been established as a matter of law." It is quite apparent that *Blank* v. *Coffin* does not stand for the proposition for which it is cited. The Blank quotation continues thus: "The *jury*, however, is the sole judge of the credibility of the witnesses (Cal. Code Civ. Proc., § 1847; see cases cited in 27 Cal.Jur. 182, § 156) and is free to disbelieve them *even though they are uncontradicted if there is any rational ground for doing so.*" The Blank case, incidentally, involved the question of whether or not it was proper for the jury to draw the inference that the automobile was being driven by an employee of the owner with his permission at the time of the accident. A majority of the court in the Blank case held that the directed verdict was improper because there was sufficient evidence "to permit the jury to infer that the car was being driven with defendant's permission." *Engstrom* v. *Auburn Auto. Sales Corp.,* 11 Cal.2d 64 [77 P.2d 1059], *Crouch* v. *Gilmore Oil Co., Ltd., supra,* and *Ceranski* v. *Muensch,* 60 Cal.App.2d 751 [141 P.2d 750], were all cases involving the inference of ownership. *Johnston* v. *Black Co.,* 33 Cal.App.2d 363 [91 P.2d 921], involved the inference of res ipsa loquitur and a situation where the trial court had

directed a verdict for the defendant on the ground of insufficiency of the evidence after the jury had returned a verdict for the plaintiff. The *defendants,* in the Johnston case, *had introduced evidence* at the trial which dispelled the inference (see pages 366 and 368). *None of these cases, with the exception of the Crouch case, involved testimony elicited under section 2055 of the Code of Civil Procedure.* The Crouch case has been discussed heretofore.

Plaintiff here has proved her injury and defendants' causal connection therewith, and that inference of negligence remains undispelled until an "affirmative showing of a definite cause for the accident, in which cause no element of negligence on the part of the defendant adheres" is made. There is here, therefore, no failure of proof as in the Crouch case. Plaintiff is not bound by any adverse testimony of any defendant called under 2055. Had the case gone to the jury it was free to believe that Dr. Eiskamp may have used a Kelly clamp; that he did, at some time, during the surgery, work in the upper quadrant of plaintiff's abdomen; or that the clamp had, during the six months it remained in plaintiff's abdomen, worked its way to the position in which it was found. ". . . the inference of negligence which is created by the rule *res ipsa loquitur* is in itself evidence which may not be disregarded by the jury and which in the absence of any other evidence as to negligence, necessitates a verdict in favor of the plaintiff." (*Ales* v. *Ryan,* 8 Cal.2d 82, 99 [64 P.2d 409].) Plaintiff here had made out her case against all defendants by proving facts which raised an inference of negligence which remained in the case as evidence until dispelled *by the defendants.*

The following statement is made in the majority opinion: "A witness may, of course, be disbelieved if there is any rational ground for doing so, and the interest of a party, would in some circumstances justify the trier of fact in disregarding his testimony. (See *Hamilton* v. *Abadjian,* 30 Cal.2d 49, 53 [179 P.2d 804] [nonsuit not involved]; *Hicks* v. *Reis,* 21 Cal.2d 654, 659-661 [134 P.2d 788] [nonsuit not involved]; *Blank* v. *Coffin,* 20 Cal.2d 457, 461-462 [126 P.2d 868] [reversal of directed verdict for defendant].)" It is, of course, elementary that the trier of fact may, *on the trial of a case,* disbelieve any witness or his testimony. We are here concerned with a *nonsuit* (*and* testimony taken under section 2055) where *all of the plaintiff's evidence and the inferences to be drawn therefrom must be taken as true and*

*all conflicts in the evidence must be disregarded!* Any evidence elicited under section 2055 to the effect that Dr. Eiskamp did not operate in the field where the Kelly clamp was later found merely creates a conflict with other evidence from which the evidence of his negligence may be inferred and must, under heretofore cited cases, be disregarded.

The following statement from the majority opinion is totally irrelevant where, as here, an appeal from a judgment of nonsuit is involved: "There are situations, however, where the interest of a party in obtaining a judgment favorable to himself will not render all of his testimony subject to disbelief. For example, where part of a defendant's testimony is harmful to him but favorable to a codefendant, as where it tends to show that the witness is liable or makes it more difficult for him to establish his own lack of fault, that portion of his testimony may be used to rebut an inference unfavorable to the codefendant provided there is nothing to indicate collusion or any other reason for disbelieving the testimony." *The question of disbelief of testimony does not enter into the case when a motion for a nonsuit is made. The defendant, in making the motion, admits that all of plaintiff's case is true.* (*People* v. *One 1940 Buick Sedan,* 71 Cal.App.2d 160 [162 P.2d 318] ; *Seaford* v. *Smith,* 86 Cal.App.2d 339 [194 P.2d 792] ; *Mastro* v. *Kennedy,* 57 Cal.App.2d 499 [134 P.2d 865] ; *Moore* v. *Belt,* 34 Cal.2d 525 [212 P.2d 509] ; *Connors* v. *Southern Pac. Co.,* 91 Cal.App.2d 872 [206 P.2d 31] ; *Karstensen* v. *Western Transp. Co.,* 93 Cal.App.2d 435 [209 P.2d 47] ; *Carlton* v. *Pacific Coast Gasoline Co.,* 110 Cal.App. 2d 177 [242 P.2d 391] ; *Baley* v. *J. F. Hink & Son,* 133 Cal. App.2d 102 [283 P.2d 349] ; *New Zealand Ins. Co.* v. *Brown,* 110 Cal.App.2d 411 [242 P.2d 674] ; *deAryan* v. *Butler,* 119 Cal.App.2d 674 [260 P.2d 98].)

The majority opinion states: "The evidence as to Eiskamp's participation in the operation consisted of the testimony of Lacy, Slegal and Eiskamp, and it was clear and uncontradicted to the effect that Eiskamp was not responsible for leaving the clamp in plaintiff's abdomen. This testimony did not in any way tend to benefit Lacy or Slegal but, to the contrary, was disadvantageous to them because the exoneration of one defendant would have the necessary effect of increasing the possibility of liability on the part of each of the other defendants. The record indicates no rational ground for disbelieving their testimony, and we hold that the inference raised against Eiskamp under the doctrine of res ipsa loquitur was

dispelled *as a matter of law.*'' (Emphasis added.) The lack of logic in, and the unsoundness of, the foregoing argument is so obvious that it should be apparent to the most uninformed. It is conceded by the majority that the favorable portion of this testimony gave rise to an inference of negligence against Dr. Eiskamp. If plaintiff is not bound by the unfavorable portion of the testimony of Drs. Lacy, Slegal and Eiskamp, how can it be said that such testimony can now be relied upon by Dr. Eiskamp to rebut the inference of negligence which arose as a result of the testimony of these witnesses favorable to plaintiff? I submit that the majority has not answered this question and it cannot do so except by its arbitrary ipse dixit ''that the inference raised against Eiskamp under the doctrine of res ipsa loquitur was dispelled as a matter of law.''

The essence of the legal theory upon which the majority holding is based is contained in the following statement from the majority opinion: ''It follows from what has been said that the testimony of a witness called by a plaintiff under section 2055 may be used to dispel an inference upon which the plaintiff relies, provided the evidence is clear, positive, *uncontradicted and of such a nature that it cannot rationally be disbelieved.* It is particularly appropriate to allow such testimony to be used to rebut the inference in cases like the present one where plaintiff, because she was unconscious while receiving the treatment that resulted in her injuries, is given the benefit of a liberalized test for res ipsa loquitur, and all persons *who had any control over her body or the instrumentalities which might have caused her injuries are required to meet the inference of negligence by giving an explanation of their conduct.* If in these circumstances evidence given by witnesses under section 2055 establishes as a matter of law that one of the defendants is free from negligence, the prima facie case against that defendant based on the inference should fall, and plaintiff's position with respect to that defendant should be the same as if she had failed to prove all the facts necessary to raise the inference.''

It is impossible for me to rationalize the foregoing statement as it requires the application of a brand of mental gymnastics which I do not possess. What I think it means is this: While the testimony of Drs. Lacy, Slegal and Eiskamp, taken under section 2055, established an inference of negligence against Eiskamp under the doctrine of res ipsa loquitur which, under the authorities, remains in the case until rebutted

by defendants, this same testimony negatives any inference of negligence against Eiskamp. This brain child is labelled by the majority as "a liberalized test for res ipsa loquitur." It sounds more reactionary than liberal to me. It is obvious that what the majority want to do here is to destroy the remedial effect of both section 2055 and the res ipsa loquitur doctrine. It is accomplishing this result by declaring that certain evidence—testimony here—"establishes as a matter of law that a defendant is free from negligence" notwithstanding the law has established an inference of negligence against him. Is this the product of rational thinking? Can legal reasoning be so obtuse? Should such conflicts exist in our law? My answer to these questions is an emphatic NO. The real difficulty is, the failure of the judicial process to function. The majority here desires to reach a result which cannot be reached by the application of legal principles. So it resorts to sophistry and it becomes enmeshed in a maze of conflicts. The judicial process operates in reverse order. It proceeds from the premise that we have a judgment which is under attack. To determine the validity of this judgment, we apply legal tests—rules of law—and we accept the result which flows from this process. In pursuit of this process, we avoid conflicts and the law becomes a smoothly operating machine geared to the efficient administration of justice.

Applying the judicial process to this case, we find that under section 2055, as construed by all of the authorities, plaintiff may establish her case by the testimony of adverse witnesses; she may do this without being bound by any testimony which is unfavorable to her. So far as her case in chief is concerned, all testimony unfavorable to her must be disregarded the same as if it were not in the record. The testimony favorable to her establishes an inference of negligence against all defendants. She may rest her case on such evidence, secure against a motion for a nonsuit. The judgment of nonsuit against her was therefore erroneous and should be reversed. This always has been the law of this state since section 2055 was enacted and would still be the law if the judicial process was followed in this case.

It would be just as honest, and do less harm to the law, if the majority, in order to reach the result it desires, would hold that no inference of negligence arose against Dr. Eiskamp because the undisputed evidence shows that he did not use a Kelly clamp in the portion of the operation he performed in plaintiff's abdomen. While I could not join in such holding,

it is my opinion that it is necessary for a plaintiff to show that a defendant was an active participant in the negligent act which resulted in the injury complained of in order to establish an inference of negligence against such defendant under the res ipsa loquitur doctrine. This was the holding of this court in *Seneris* v. *Haas*, 45 Cal.2d 811 [291 P.2d 915], where a judgment of nonsuit in favor of Dr. Haas was affirmed. But the majority expressly holds that under the evidence here an inference of negligence arose against Dr. Eiskamp and I agree with this holding. It appears to be the law of this state, however, that whether a particular inference can be drawn from certain evidence is a question of law, but whether the inference shall be drawn, in any given case, is a question of fact for the *jury*. (See cases cited in 10 Cal.Jur. 738-739, § 60.)

In view of the foregoing rule it would obviously be more logical for the majority to conclude that under the evidence produced here no inference of negligence arose against Dr. Eiskamp. In so holding the majority would have at least a semblance of authority to support its otherwise wholly unfounded conclusion.

We have held (*Ales* v. *Ryan*, 8 Cal.2d 82, 95, 100 [64 P.2d 409]) that leaving a foreign object in a patient's abdomen does not ordinarily occur without negligence and in *Ybarra* v. *Spangard*, 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258], that when a patient receives unusual injuries while unconscious, all defendants having any control over his body or the instrumentalities which might have caused the injuries may be called upon to rebut the inference of negligence by giving an explanation of their conduct. Nurse Pogatschnik, as an employee of the hospital, was one of the defendants having ''control'' over the unconscious body of the plaintiff. Plaintiff established through the testimony of Mrs. Evelyn Craig, superintendent of defendant hospital, who was called under section 2055, that it was not the practice of the hospital, through its nurse employees, to make an instrument count after surgery. Whether such an omission constituted negligence was answered adversely to defendant hospital in *Ales* v. *Ryan*, 8 Cal.2d 82, 100 [64 P.2d 409], where this court said: ''We have already held upon authority that the failure to remove a sponge from the abdomen of a patient is negligence of the ordinary type and that it does not involve knowledge of *materia medica* surgery but that it belongs to that class of mental lapses which frequently occur in the usual

routine of business and commerce, and in the multitude of commonplace affairs which come within the group of ordinary actionable negligence. The layman needs no scientific enlightenment to see at once that the omission can be accounted for on no other theory than that someone has committed actionable negligence." Mrs. Craig also testified, although her testimony is not binding on plaintiff, creates merely a conflict in the evidence, and may be ignored, that it was not the custom of hospitals in the community to make an instrument count after surgery. I am of the opinion that the majority opinion incorrectly discusses this testimony as failing to "dispel" the inference of negligence as to the hospital and surgical nurse. Plaintiff is not bound by any adverse testimony elicited under section 2055, as I have heretofore pointed out. The testimony as to custom merely created a conflict in the evidence and might be considered adverse to plaintiff if it were not for cases holding that "General negligence cannot be excused on the ground that others in the same locality practice the same kind of negligence." (*Ales* v. *Ryan,* 8 Cal.2d 82, 100 [64 P.2d 409].) It was also said in *Pauly* v. *King,* 44 Cal.2d 649, 655 [284 P.2d 487], quoting from *Owen* v. *Rheem Mfg. Co.,* 83 Cal.App.2d 42, 45 [187 P.2d 785], that "Custom may assist in the determination of what constitutes due care. What others do is some evidence of what should be done, but custom is never a substitute for due care."

We have repeatedly held that a hospital must exercise reasonable care towards a patient as his known condition may require (*Wood* v. *Samaritan Institution, Inc.,* 26 Cal.2d 847, 851 [161 P.2d 556]; *Rice* v. *California Lutheran Hospital,* 27 Cal.2d 296, 302 [163 P.2d 860]; *Ault* v. *Ross General Hospital,* 105 Cal.App.2d 78, 80 [232 P.2d 528]). "If the alleged neglect relates to matters or conduct which are reasonably within the ken of the average layman the jury may determine the culpability of the person charged therewith without the aid of experts. If it relates solely to the exercise of judgment in the application of skill and learning then proof of the negligence must be made by experts." (*Valentin* v. *La Societe Francaise,* 76 Cal.App.2d 1, 5 [172 P.2d 359]; *Dean* v. *Dyer,* 64 Cal.App.2d 646, 653 [149 P.2d 288]; *Stevenson* v. *Alta Bates, Inc.,* 20 Cal.App.2d 303, 309 [66 P.2d 1265]; *Inderbitzen* v. *Lane Hospital,* 124 Cal.App. 462 [12 P.2d 744, 13 P.2d 905].) It appears to me that the failure to make an instrument count subsequent to surgery is a matter "reasonably within the ken" of the average layman to permit the jury,

without the benefit of expert evidence, to determine whether or not such failure constituted negligence, or the failure to exercise such reasonable care towards a patient as his known condition may require (*Valentin* v. *La Societe Francaise,* 76 Cal.App.2d 1, 5 [172 P.2d 359]; *Wood* v. *Samaritan Institution, Inc.,* 26 Cal.2d 847, 851 [161 P.2d 556]). But, the inference of negligence having arisen because of the Kelly clamp having been left in plaintiff's abdomen during surgery at a time when the defendants had control of her unconscious body, the question of whether such negligence existed was for the trier of fact on a trial of the issues involved. The evidence adduced by plaintiff, together with the favorable inferences to be drawn therefrom, when conflicting evidence is disregarded, was more than sufficient to permit the cause to be tried by the jury, or the court, as the case may be.

It is impossible to rationalize the majority opinion on any theory of law or logic. It certainly finds no support in the prior decisions of this court or the appellate courts of this state. In the absence of any basis in legal philosophy for the holding here, it is obvious that considerations of expediency have controlled. I submit that such considerations are foreign to the judicial concept. If the law is to be changed, the Legislature is the law-making body, and such change should be brought about by legislation and not by judicial fiat. In our constitutional form of government, with its system of checks and balances, the Legislature is more responsive to the will of the people than the courts and any change in public policy or statutory law should originate with it. I submit that the action of this court here invades the province of the Legislature in a most vital field of legislation and public policy as it repeals or nullifies the provision in section 2055 of the Code of Civil Procedure that a party is *not bound* by testimony elicited under this section.

I would reverse the judgments of nonsuit as to defendants Eiskamp, Pogatschnik and the Watsonville Community Hospital.

SHENK, J.—I dissent. I am in agreement with the dissenting opinion of Mr. Justice Carter insofar as he concludes that the majority opinion has misapplied section 2055 of the Code of Civil Procedure and the doctrine of res ipsa loquitur. It is well established by the authorities in this state and cited by Mr. Justice Carter that the plaintiff may, under section 2055, call the defendants as adverse witnesses

and examine them "as if under cross examination" and without prejudice to his own cause. The plaintiff is not bound by that testimony. That which is unfavorable to him must, for the purposes of a motion for a nonsuit, be disregarded, however strong or persuasive or even conclusive it might be in favor of the defendants and against the plaintiff in the trial on the merits. The plaintiff is entitled to the benefit of whatever portion of that testimony is favorable to him and that portion only is to be considered in evidence for the purpose of a nonsuit. For that purpose the plaintiff's case is supported by all favorable inferences that may be drawn from that testimony. Those inferences may be in addition to the inference included in the doctrine of res ipsa loquitur which alone is sufficient to take the case to trial on the merits. The question of when an inference in favor of the plaintiff may be dispelled by the testimony of his own witnesses is not involved in this case. In law the defendants, when called by the plaintiff under section 2055, are not the plaintiff's witnesses. With the rule now announced by the majority a plaintiff may not call a defendant for examination under that section except at the peril of having the testimony so taken and which is unfavorable to him used against him in support of a motion for a nonsuit. This is an unfortunate and confusing deviation from the established rules. Under the authorities the res ipsa loquitur doctrine is applicable to this case and its beneficial purpose is effectively destroyed if in calling the defendants as adverse witnesses the plaintiff must assume the hazard of having them justify their conduct and by their own testimony obtain a judgment of nonsuit. The record shows without question that the testimony of the defendants obtained under section 2055 insofar as it is favorable to the plaintiff is in support of the inference of negligence, and that inference has not been dispelled either in fact or in law. The defendant Eiskamp took part in the operation and he should be required to defend on the merits along with his codefendants.

The petition of respondents Watsonville Community Hospital and Kay Pogatschnik for a rehearing was denied January 16, 1957.